**CYNDEE L. PETERSON**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: Cyndee.Peterson@usdoj.gov**
**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 11-08-M-DWM** |
| **Plaintiff,** | **SENTENCING MEMORANDUM** |
| | **AND NOTICE OF WITNESSES** |
| **vs.** | |
| **WILLIAM RICHARD NIELSEN,** | |
| **Defendant.** | |

## INTRODUCTION

The defendant faces sentencing for his conviction for coercion and

enticement of a minor, in violation of 18 U.S.C. § 2422(b).  This offense

carries a minimum punishment of 10 years and a maximum punishment of life imprisonment, a $250,000 fine, a term of not less than 5 years and up to lifetime supervised release, and a $100 special assessment.   The government will move to dismiss the forfeiture allegation.  The defendant pled guilty to the charge, and has been in custody since his initial arrest.

The U.S. Probation Office prepared a presentence investigation report dated July 5, 2011.  The report outlines the nature of the defendant's criminal misconduct, discusses relevant sentencing authority and factors, reviews the defendant's personal history and identifies the results of the sexual offender evaluation and polygraph. The report calculates the guidelines total offense level to be 34 with a criminal history category of V.  PSR 10, 13.  Given that calculation, the defendant's advisory  guideline range is 235-293 months.  PSR 27.

The defendant filed objections to the PSR which are set forth in the PSR Addendum.

The government has no objections to the presentence report and agrees with the Probation Office's calculation of the defendant's guideline range.  At sentencing, the government will move for the

2

additional one-level downward adjustment for acceptance of responsibility. U.S.S.G. § 3E1.1. The government requests that the court vary upward from the advisory guideline range and impose a sentence of 480 months imprisonment to be followed by a lifetime term of supervised release.

## CONTEXT FOR SENTENCING

The statutory minimum term of imprisonment that the defendant faces for this offense is 10 years and a maximum punishment of life imprisonment. Any term of imprisonment must be followed by a term of not less than 5 years and up to lifetime supervised release. The possible fine is $250,000 fine. There is a mandatory penalty assessment of $100.

While the Sentencing Guidelines must be consulted, they are merely "advisory" in that a sentencing court now must also consider factors outlined at 18 U.S.C. § 3553(a). Those factors include:

(1)    The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    The need for the sentence imposed –

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) To afford adequate deterrence to criminal conduct;

3

(C) To protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    The kinds of sentences available;

(4)    The kinds of sentence and the sentencing range established for –

(A) The applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines (i) issued by the Sentencing Commission . . .

(5)    Any pertinent policy statement –

(A) Issued by the Sentencing Commission . . .

(6)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    The need to provide restitution to any victims of the offense.

The government's recommended sentence is sufficient but not greater than necessary, because the defendant's offense conduct is egregious and the sentence imposed is less than the statutory maximum of life imprisonment.  While the government is not insensitive to the defendant's young age, and the prospect that the requested sentence might mean the defendant would not be released until he is

4

approximately 65 years old, the government believes that sentence is necessary to reduce the defendant's opportunity to sexually exploit other young girls and hold him accountable for his criminal actions.

## THE GOVERNMENT'S POSITION

The government urges the court to impose a sentence of 480 months imprisonment to be followed by a lifetime term of supervised release.  This amount of punishment is necessary to address all of the factors at 18 U.S.C. § 3553(a).

In the case of child exploitation prosecutions, the government has a compelling interest to protect children from those who would exploit them.  The heavy possible punishments available for these types of crimes reflect the societal concern that crimes connected to the sexual exploitation of children are some of the most heinous that can be committed.  The defendant is the very type of offender that Congress contemplated when it drafted and enacted the child exploitation laws.

The defendant is not the typical defendant charged with this offense that this Court more frequently sees and sentences.   Due to a prior offense, the defendant was a registered sexual offender at the time of this crime.  He had previously entered sexual offender treatment four

times and failed to complete the treatment all four times.  *See* Dr.

Scolatti's Eval. at 7.  He was released from probation approximately one

year prior to committing this offense.  PSR 13.  He was dishonest during

his polygraph. PSR 25.  His sexual offender evaluation indicates:

- The MMPI-2RF is likely invalid due to inconsistent
  responses.  Scolatti's Eval. at 16.

- The PAI indicated that while the defendant is interested in
  treatment, the nature of some of the defendant's problems
  suggests that "treatment would be fairly challenging, with a
  difficult treatment process and the probability of reversals."
  Scolatti's Eval. at 19.

- The OMNI Personality Inventory indicated the defendant is
  callous, lacks self-control and remorse, and is likely to be
  impulsive and reckless.  It also indicates he is "not likely to
  learn from experience."  Scolatti's Eval. at 20.

- The Hare checklist rated the defendant as being in the
  "high" range for psychopathic traits.  The evaluation states
  the defendant is impulsive, has poor judgment and does not

consider the long term consequences of his actions.  Scolatti's
Eval. at 21-22.

·   The PPI-R scored the defendant within the normal range of
functioning.  But, a significant finding pertained to the
Blame Externalization subscale.  That subscale indicated the
defendant perceived himself as the innocent victim and
rarely takes responsibility for his actions.  Scolatti's Eval. at
22.

·   The ADS indicated the defendant is classified as having a
"Mild Indication of Anger Pathology". Scolatti's Eval. at 24.

·   Under the Abel Assessment, the defendant indicated no
consistent sexual interest in pre-pubescent children.[1]  Yet,
Dr. Scolatti indicated that the defendant's Cognitive
Distortion Scale fell in the "problematic range" because there
was no indication the defendant "believes sexual contact

_____

[1]There appears to be an error in the report as it indicates that his
sexual interests both includes and excludes girls aged 14-17.  But later,
the evaluation references a sexual interest in girls aged 14-17.
Scolatti's Eval. at 27.

between adults and children does not hurt the child in some manner." Scolatti's Eval. at 26-27.

· The SORAG indicates that for violent recidivism the defendant falls into the highest third for offenders. The evaluation discloses that 80% of the individuals in the defendant's category reoffend violently within an average of 10 years. Scolatti's Eval. at 28.

· The STATIC-2002R predicts that out of a possible range of sexual recidivism of -2 to 13, the defendant scored a 6 (a Moderate risk to sexually reoffend).[2] Scolatti's Eval. at 28.

· On the STABLE-2007 which predicts risk factors, the defendant scored a 20 out of a possible 26 points classifying him as "High Needs". When combined with the results of the STATIC 2002R, the defendant is an overall Moderate-High level of risk designation. Scolatti's Eval. at 29.

_____

[2]There is a typographical error in the report where Dr. Scolatti did not input the score under the STATIC 2002R section so it does not disclose the actual risk category (Low, Low-Moderate, Moderate, Moderate-High, or High Risk). However, the evaluation discloses the defendant is a Moderate risk to sexually reoffend under the STATIC 2002R in the next section titled "STABLE-2007". Scolatti's Eval. at 28-29.

- The defendant was diagnosed as having a significant Antisocial Personality Disorder with prominent Borderline and Schizoid features.  He was also diagnosed with two sexual classifications: Sexual Sadism (real, not simulated) and Hebephilia.  Scolatti's Eval. at 33-34.

- Dr. Scolatti determined the defendant is a poor candidate for treatment from a rehabilitative perspective.  He recommended the defendant complete treatment while incarcerated followed by lifetime supervised release. Scolatti's Eval. at 39.

The defendant's poor impulse control, reckless behavior and irresponsibility was previously identified in 2002 during his first psychosexual evaluation.  PSR 19.  It appears that after approximately ten years and several attempts at sexual offender treatment, the defendant has made no strides in those areas.  Instead, he has victimized another child – sexually and violently – for days.

The defendant has done immeasurable harm to the victim.  Not only does he minimize his actions and not recognize this harm, he does not even recognize that this 12 year old child whom he repeatedly raped

9

for days *is* a victim.  Instead, the defendant states that the child in this case is lying in order to ". . . mak[e] herself look like the victim." Scolatti's Eval. at 15.  This is consistent with his evaluation results which showed the defendant perceives *himself* as the innocent victim and rarely takes responsibility for his actions.  Scolatti's Eval. at 22.

Not only does he minimize his criminal conduct in this case, but he minimizes his historical criminal actions as well.  During his evaluation with Dr. Scolatti, he denied sexually abusing his sister.  Scolatti Eval. at 8.  In 2002, he also initially denied that offense.  PSR 20.  But, after a failed polygraph, the defendant finally admitted his criminal actions. *Id.*  Now, he has gone back into his typical denial and blame mode with regards to that crime.

That pattern is very similar to the defendant's actions in this case. When initially arrested, he did not admit his actions.  It was not until a polygraph, that the defendant confessed to his criminal conduct and his victimization of this 12 year girl.  Then, when being evaluated for sentencing, he returns to his minimization, denial and refusal to accept responsibility for his actions.

## CONCLUSION

The court should impose a term of imprisonment of 480 months to be followed by a lifetime term of supervised release.  Combined with a recommendation for participation in a federal sex offender treatment program, Dr. Scolatti's recommended conditions and the standard conditions of supervised release for persons convicted of sex offenses, the sentence will be sufficient but not great than necessary.  The defendant has repeatedly proved himself to be a danger to the community.  This term of imprisonment will address the seriousness of the offense and protect the public from the defendant while considering the history and characteristics of the defendant.

## NOTICE OF WITNESSES

At the sentencing hearing, the government will request permission to present the testimony of the following:

- *SA Matthew Salacinski, FBI, Billings, Montana.*  SA Salacinski is a Certified Computer Examiner.  The scope and the purpose of SA Salacinski's testimony will be to provide the Court information about why a cellular phone is "a computer".

- *SA Monte Shaide, FBI, Missoula, Montana.*  SA Shaide is the assigned case agent who investigated the case.  The scope and purpose of his testimony will be to describe the cellular

phone used in this case.  He will also testify about the defendant's initial denial and play the defendant's recorded admission which provides the specific details of the crime including the level of violence perpetrated by the defendant upon the 12 year old victim.

Respectfully submitted,

DATED this 11th  day of July, 2011.

MICHAEL W. COTTER
United States Attorney


*/s/ Cyndee L. Peterson*
Assistant U.S. Attorney
Attorney for Plaintiff

# CERTIFICATE OF SERVICE

\* \* \*

    I hereby certify that on July 11, 2011, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| \_1, 2\_\_\_ | CM/ECF |
| \_\_\_\_\_ | Hand Delivery |
| \_\_\_\_\_ | Mail |
| \_\_\_\_\_ | Overnight Delivery Service |
| \_\_\_\_\_ | Fax |
| \_\_\_\_\_ | E-Mail |

1.    Clerk, U.S. District Court

2.    Michael Donahoe
       Federal Defenders Office
       PO Box 250
       Helena, Montana 59624-0250

*/s/Cyndee L. Peterson*
Assistant U.S. Attorney

13