IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

   -vs-                        Criminal Docket
                                  No. 11-08-M-DWM
WILLIAM RICHARD NIELSEN,       Court of Appeals
                                  No. 11-30189
        Defendant.

_____

TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

Heard in Courtroom No. 217
Russell Smith Courthouse
201 East Broadway
Missoula, Montana
April 5, 2011
11:11 a.m.

BEFORE THE HONORABLE DONALD W. MOLLOY

UNITED STATES DISTRICT JUDGE

TINA C. BRILZ, RPR, FCRR
Official Court Reporter
United States District Court
215 First Avenue North - P.O. Box 2186
Great Falls, Montana  59401-2186

Proceedings recorded by mechanical stenography, transcript
produced by computer.

A P P E A R A N C E S :


PRESENT ON BEHALF OF THE PLAINTIFF, THE UNITED
STATES OF AMERICA:

        MS. CYNDEE L. PETERSON
        Assistant U.S. Attorney
        OFFICE OF THE U.S. ATTORNEY
        P.O. Box 8329
        Missoula, Montana  59807


PRESENT ON BEHALF OF THE DEFENDANT, WILLIAM RICHARD
NIELSEN:

        MR. MICHAEL DONAHOE
        Assistant Federal Defender
        FEDERAL DEFENDERS OF MONTANA
        Great Northern Town Center
        50 West 14th Street, Suite 300
        P.O. Box 250
        Helena, Montana  59601-0250

1  The following proceedings were had:

2

3          THE COURT:  Please be seated.

4      Would you call the next matter on the calendar, please.

5          CLERK OF COURT:  This is the time set for a change of

6  plea in CR-11-8-M-DWM, United States of America versus William

7  Richard Nielsen.

8          THE COURT:  Good morning, Ms. Peterson.

9          MS. PETERSON:  Good morning, Your Honor.

10          THE COURT:  I understand that you have arrived at a

11  plea agreement in this case; is that right?

12          MS. PETERSON:  Yes, Your Honor.

13          THE COURT:  Would you please state for the record

14  what the essence of that plea agreement is.

15          MS. PETERSON:  I will, Your Honor.

16      The defendant has agreed to admit -- to plead guilty to

17  the charge that's in the indictment.  There is one change with

18  regards to the forfeiture allegation, Your Honor, that is

19  included in the indictment.  The two items that are listed, the

20  computer and the phone, that we seized were not actually the

21  items that were used to commit the crime.  We did not find the

22  phone.  We obtained all of the records through paper documents.

23  And so the plea agreement reflects that the defendant would

24  admit to using the phone but that -- after discussions with the

25  defense attorney this morning, Your Honor, the government will,

1  in fact, move to dismiss the forfeiture allegation, so he will

2  not be admitting that.

3      With regards to the rest of the agreement, Judge, the

4  government has agreed that it will not pursue any other

5  charges; the parties are free and reserve the right to make any

6  sentencing recommendations come the time of sentencing; the

7  defendant has agreed to submit to testing for sexually

8  transmitted diseases and has also agreed to complete a sex

9  offender evaluation with a polygraph.  The government has

10  agreed to recommend the defendant receive three points'

11  reduction for acceptance of responsibility in the guidelines

12  under 3C1.1, unless the defendant obstructs justice.  The

13  defendant has agreed to waive his right to appeal if he's

14  sentenced to a term that is within or below the guideline

15  range.  And then the parties are agreed that restitution will

16  be determined at sentencing.

17          THE COURT:  All right.

18      Thank you.

19      Good morning, Mr. Donahoe.

20          MR. DONAHOE:  Good morning, Your Honor.

21          THE COURT:  Is that the essence of the plea

22  agreement?

23          MR. DONAHOE:  It is.

24          THE COURT:  All right.

25      Then if you and your client would approach the lectern,

1    I'll ask him to raise his right hand and be sworn.

2

3    WILLIAM RICHARD NIELSEN, having been called as a witness on his

4    own behalf, being first duly sworn according to law, was

5    examined and testified as follows:

6

7              THE COURT:  Do you realize that you're now under oath

8    and if you would say something to me during the course of this

9    proceeding that is either false or misleading, you might be

10   subject to further prosecution for perjury or for making a

11   false statement?

12             THE DEFENDANT:  I understand.

13             THE COURT:  Would you tell me what your full name is,

14   please.

15             THE DEFENDANT:  William Richard Nielsen.

16             THE COURT:  And do you pronounce your last name

17   Nelson?

18             THE DEFENDANT:  Nielsen.

19             THE COURT:  Nielson?  Am I correct?  Nielsen?

20             THE DEFENDANT:  Yes.  N-I-E-L-S-E-N.

21             THE COURT:  Mr. Nielsen, how old are you?

22             THE DEFENDANT:  Twenty-four.

23             THE COURT:  Are you married?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  Do you have any dependent children?

1          THE DEFENDANT:  Not that I know of.

2          THE COURT:  What is your education, Mr. Nielsen?

3          THE DEFENDANT:  GED with a few beginning courses in

4    college.

5          THE COURT:  Did you go to high school at all?

6          THE DEFENDANT:  Conrad High, Great Falls High -- or

7    Conrad High, CMR High in Great Falls, and Pine Hills.

8          THE COURT:  All right.

9       So how many years were you at Conrad High School?

10          THE DEFENDANT:  Roughly one-and-a-half.

11          THE COURT:  And then did you -- your family moved to

12    Great Falls?

13          THE DEFENDANT:  Due to juvenile court, I was moved to

14    Great Falls, where I was in CM Russell High for ten months and

15    then Pine Hills.

16          THE COURT:  And at Pine Hills, is that where you got

17    the GED?

18          THE DEFENDANT:  No.  I got the GED after I was

19    released.  They didn't have enough classes for me to get my

20    remaining three points -- two five credits.

21          THE COURT:  All right.

22       Have you ever been treated for any kind of mental illness?

23          THE DEFENDANT:  They had me on Wellbutrin for my

24    depression.

25          THE COURT:  When was that?

1           THE DEFENDANT:  Up until January.

2           THE COURT:  January of 2011?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Who's "they"?

5           THE DEFENDANT:  Western Montana Mental Health.

6           THE COURT:  And that is in Missoula?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Was that after you were arrested?

9           THE DEFENDANT:  Before I was arrested.

10          THE COURT:  Were you regularly seeing a counselor

11     there?

12          THE DEFENDANT:  Every one to two months.

13          THE COURT:  And what was the purpose you were seeing

14     a counselor?

15          THE DEFENDANT:  Depression.  Anxiety.  And I was also

16     seeing a job counselor.

17          THE COURT:  All right.

18       Have you been treated for being addicted either to

19     narcotics or to alcohol?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  All right.

22       Are you currently under the care of a doctor?

23          THE DEFENDANT:  No.  I'm currently incarcerated.

24          THE COURT:  I realize that.  But there are questions

25     that I need to ask you, Mr. Nielsen --

1          THE DEFENDANT:  I do not have a personal physician.

2          THE COURT:  Are you taking any medicine, either

3   over-the-counter medicine or prescription medicine?

4          THE DEFENDANT:  Not at this time.

5          THE COURT:  The reason I'm asking those questions,

6   Mr. Nielsen, is I'd like to know if you think there's something

7   about your physical condition or your mental condition that

8   would keep you from understanding why we are here this morning?

9          THE DEFENDANT:  No, sir, there is not.

10          THE COURT:  Would you tell me why you think we're

11   here this morning.

12          THE DEFENDANT:  We're here because I was arrested and

13   indicted for enticement -- coercion and enticement of a minor.

14          THE COURT:  And this isn't a trial this morning.

15   We're here for some other reason, as I understand.

16          THE DEFENDANT:  Change of plea.

17          THE COURT:  Okay.

18      So, did you receive a copy of the indictment?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Have you had enough time to go over that

21   with Mr. Donahoe?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Has he been able to explain to you what

24   the legal predicament is that you find yourself in?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  And did Mr. Donahoe answer all of your

2   questions for you to your satisfaction?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Was there anything that you wanted him to

5   do by way of looking into legal issues or factual matters that

6   he refused to do or did not do?

7          THE DEFENDANT:  Not to my recollection.

8          THE COURT:  Okay.

9      Well --

10          THE DEFENDANT:  I asked him about changing

11   citizenship status.  And he explained that it had no bearing on

12   this case.

13          THE COURT:  Tell me what -- what's the concern there?

14          THE DEFENDANT:  There was.

15          MR. DONAHOE:  Your Honor, it's kind of like a Freeman

16   thing.  Apparently, he got some jailhouse advice that if you

17   become an American national as opposed to an American citizen,

18   that you'd be impervious to charges.

19          THE COURT:  Is that what it's all about?

20          THE DEFENDANT:  Yeah.

21          THE COURT:  I'm sorry?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Okay.

24      Well, have you talked that over thoroughly with

25   Mr. Donahoe, your lawyer?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And do you realize that Mr. Donahoe is

3     not in jail, and he's a lawyer?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And some of those jailhouse lawyers don't

6     have any legal training?

7          THE DEFENDANT:  Yeah.

8          THE COURT:  All right.

9        Well, in the indictment -- I should have asked you a

10    couple of other questions:  Did you discuss the mandatory

11    minimum or the sentencing range in this case?

12         THE DEFENDANT:  The sentencing range we discussed,

13    yes, Your Honor.

14         THE COURT:  Okay.

15       And that was all thoroughly discussed between you and your

16    attorney?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.

19       Well, the indictment charges:  The grand jury charges

20    between December 15th, 2010, and January 5th, 2011, at

21    Missoula, in the State and District of Montana, the defendant,

22    William Richard Nielsen, did use any facility of interstate and

23    foreign commerce to knowingly persuade, induce, entice, and

24    coerce a 12-year-old girl, whose name is withheld to protect

25    the victim's privacy, to engage in any sexual activity for

1  which any person could be charged with an offense, namely,

2  sexual intercourse without consent pursuant to Montana Code

3  Annotated Section 45-5-503, in violation of 18 U.S. Code

4  2422(b).

5      Now, do you know what you're being charged with there?

6          THE DEFENDANT:  Sexual intercourse without consent,

7  coercion, and enticement of a minor.

8          THE COURT:  All right.

9      And do you have an understanding of what the range of

10  penalties is in the case?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  What is your understanding?

13          THE DEFENDANT:  Minimum ten years to life

14  imprisonment, up to a $250,000 fine, not including restitution.

15  Five years to lifetime supervised release.

16          THE COURT:  And you'd have to pay a $100 special

17  assessment at the time of sentencing.

18      Do you understand that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  There are some collateral consequences.

21  I won't go into them in detail, but if you plead guilty to this

22  offense and if I accept your plea, you're going to be required

23  to register as a sex offender; that will probably be something

24  that will follow you for the rest of your life.  And you'll

25  have to comply with all state and federal sex offender

1  registration laws, which will, I'm sure, impact your ability to

2  obtain work.  It will impact your ability to find housing.

3  It's going to probably be a factor in terms of any

4  relationships that you have with people who may have children

5  under the age of 18 years old.

6      Do you understand that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And do you realize that there are

9  Draconian laws regarding sex offender registration that if you

10 fail to comply with the laws, then you can end up getting

11 charged either in the federal or state court for different

12 crimes?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  All right.

15     Well, do you have any question about what the nature of

16 the charge is or the mandatory minimum or potential maximum

17 sentence in the case?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  All right.

20     Well, are you satisfied with the representation that

21 Mr. Donahoe has provided to you in this case?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Mr. Donahoe, are you satisfied there are

24 no factual or legal defenses to the charge contained in the

25 indictment?

1          MR. DONAHOE:  I am, Your Honor.  I do have a concern

2     about the factual basis, but I thought I'd mention that when we

3     got there, I guess.

4          THE COURT:  So tell me what you just said.

5          MR. DONAHOE:  The factual basis, Your Honor.  I

6     understand, you know, just through the pretrial process that

7     the government's theory here is that -- well, let me back up a

8     second.  The discovery in this case is unique -- the case is

9     unique in that it doesn't disclose actual words going on

10    between the young lady and Mr. Nielsen.

11         Up until this point, every case, I think, I've handled

12    under this series of statutes has referenced directly what

13    those chats were, what those words were, because the operative

14    crime here, I think, is the words, at least the Sixth Circuit

15    thinks that.  The United States -- the theory here is that

16    absent the words, if we prove that the actual sex occurred,

17    that can circumstantially show that the coercion was brought to

18    bear.  And I understand that theory.  But I guess absent the

19    words, I have that concern.  I just -- I'm not trying to queer

20    the deal.  I'm not trying to make a problem here.  I just want

21    to tell the court that I explained this to Mr. Nielsen, what my

22    view of this was, how the trial would go, what the

23    circumstantial proof would be, that sort of thing.  These

24    individuals had contact with each other over the period of a

25    couple of days, about 56 hours.  And she was here in Montana.

1    So -- and the front end of that and the Offer of Proof, the

2    recitation says that -- the narrative says that he thought she

3    was 18.  Mr. Nielsen does concede prior to her arrival here he

4    was told that she was 12.  So I guess the long and the short of

5    it is, is that the entire mix tells me that if the case went to

6    trial and Your Honor was so inclined and the jury were

7    instructed that the completed sex could circumstantially show

8    the intent and so on, he would be convicted.  But there still

9    could be that possibility that if Your Honor was confronted

10   with that Rule 29 problem at such a trial, I can't speak for

11   the court, I don't know how you would rule on that.

12              THE COURT:  Well, does that change any of your advice

13   to Mr. Nielsen?

14              MR. DONAHOE:  No.

15              THE COURT:  And Mr. Nielsen, you've, obviously,

16   discussed this thoroughly with Mr. Donahoe?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Do you still want to go forward?  Plead

19   guilty?

20              THE DEFENDANT:  Yes.

21              THE COURT:  All right.

22       Well, is your willingness to plead guilty based upon your

23   own knowledge of what actually happened?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  Now, I have a copy of the plea agreement

1  in this case, Mr. Nielsen.  And I'm looking at a document that

2  is 12 pages long.  And on page 12 over the typewritten words

3  "William Richard Nielsen, defendant," appears in blue ink the

4  signature:  "Will R. Nielsen, 3/29/11."

5       Is that your signature?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  And did you read the entire document,

8  Mr. Nielsen, before you signed it?

9            THE DEFENDANT:  Yes, sir.

10            THE COURT:  If you had questions about any of the

11  words or any of the concepts or ideas in the plea agreement,

12  did you discuss those with your lawyer before you signed off on

13  the agreement?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  And did that happen?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  All right.

18       And then did you initial every page in the lower

19  right-hand corner?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  Can you tell me why you did that?

22            THE DEFENDANT:  To show that I read and understood

23  the pages presented to me.

24            THE COURT:  Okay.

25       So anybody looking at the plea agreement, if they see your

1  initials on a page, is it fair for them to assume that you read

2  the page, you understood it, and you agreed with it?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Now, is this plea agreement you and I are

5  talking about the entire agreement that you have with the

6  United States?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Did anybody make an oral promise to you

9  that's not in this written agreement?

10          THE DEFENDANT:  No, sir.

11          MR. DONAHOE:  Your Honor, could I add something here?

12          THE COURT:  Sure.

13          MR. DONAHOE:  Also that's unique to this case, I have

14  advised Mr. Nielsen that in my estimate under Montana law,

15  statutory jeopardy provision, since the sexual intercourse

16  without consent is on the table here in terms of proof, the

17  state sovereign would be barred from prosecuting him for that

18  crime if the plea is accepted and he's sentenced here.  It's an

19  extraordinary piece of advice, and I wanted the court to know

20  that I had given it to him, and that he understands it.

21          THE COURT:  Right.  Well, I can't make any

22  determination on that.  I know there's a statute you're

23  referencing, and therefore, factual arguments to be made

24  concerning the nature of the charge, et cetera, et cetera.  But

25  I can't make any determination about that.  And that relates,

though, to the question that I asked you when I said:  Was

there some oral promise that you were relying on that isn't in

the plea agreement?  You told me no.  And then Mr. Donahoe

explained that you and he have had some discussion.  And I

don't need to know the details of it, but he has explained to

you statutory jeopardy in Montana.  And that he expressed an

opinion as to whether or not that statute would preclude the

state from prosecuting you for sexual intercourse without

consent and expressed his opinion.  So that -- is that part of

the reason -- I mean, is that an oral promise that you're --

          THE DEFENDANT:  No, sir.

          THE COURT:  Because I think it was advice, it wasn't

a promise; right?

          THE DEFENDANT:  It was advice.

          THE COURT:  Okay.

     And you understand that I have no control over what state

prosecuting authorities might do, nor does Mr. Donahoe or the

U.S. Attorney.

     Is that understood?

          THE DEFENDANT:  Understood, sir.

          THE COURT:  Okay.

     So do you believe that there were threats made to get you

to enter this plea agreement?

          THE DEFENDANT:  No, sir.

          THE COURT:  Threats to your family?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Well, you've told me this is the entire

3    agreement that you have.  Let's talk about a couple of

4    provisions that are in this plea agreement.

5          Would you look at page 8, paragraph 8.  Have you looked at

6    that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Tell me what your understanding is of the

9    significance of paragraph 8 as it relates to you.

10          THE DEFENDANT:  I cannot arbitrarily appeal the

11    sentence with this plea of guilty if I don't like the

12    sentencing.

13          THE COURT:  Okay.

14          I think that's sort of what it is.

15          Under the plea agreement or the plea agreement itself, and

16    under the Rules of Criminal Procedure, if I accept your plea

17    and the plea agreement, and then you get a sentence you don't

18    like, well then, that's too bad.  You don't get to turn to

19    Mr. Donahoe and say:  "Well, I've been thinking about it.  And

20    what you were telling me about going to trial, I'd like to go

21    to trial now."  You don't get to do that.

22          But this agreement says that if you are sentenced within

23    the advisory guideline range or below it, then you give up any

24    right to appeal the determination of what the sentence is.

25    That's what this provides.

1      Do you understand that?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  And in the second paragraph of paragraph

4  8, it says that you waive your right to challenge the sentence

5  by collateral proceedings.  That's by habeas corpus under 28

6  U.S. Code 2255.

7      So what that means is that if you get sentenced within the

8  advisory guideline range and you have no objection to the way

9  those guidelines were determined, then you can't have a direct

10  appeal and you can't challenge your conviction or the sentence

11  by habeas corpus.

12      Do you understand that?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Now, the exception to the latter would be

15  you can only be bound by things that you know or reasonably

16  could know right now.  So there's a little tiny, tiny, tiny,

17  tiny window sometimes that people can squeeze through.  But for

18  all intents and purposes, you would be giving up the right to a

19  direct appeal and the right to a collateral challenge to any

20  conviction.

21      Understood?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Okay.

24      Well, you've said a couple of things during the course of

25  this proceeding that make me think you may have some sort of a

 1  criminal record.  Do you have any prior felony convictions?

 2          THE DEFENDANT:  Just a failure to register and then a

 3  sealed juvenile file, sir.

 4          THE COURT:  A failure to register as a sex offender?

 5          THE DEFENDANT:  Yes.

 6          THE COURT:  Was that a state conviction?

 7          THE DEFENDANT:  Yes, sir.

 8          THE COURT:  When was that?

 9          THE DEFENDANT:  I was picked up in November of '04.

10  I was sentenced and released in June of '05.

11          THE COURT:  Did you go to Montana State Prison?

12          THE DEFENDANT:  No.

13          THE COURT:  All right.

14      Well, the -- have you been discharged from that sentence?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Well, under Montana law, there may be

17  provisions you could invoke to have certain rights restored to

18  you.  But you need to understand that if you plead guilty here

19  today, that there are collateral consequences to the plea of

20  guilty that involve valuable civil rights.  In addition to

21  losing your liberty, you're going to lose the right to vote,

22  you lose the right to hold public office, you lose the right to

23  be on a trial jury, you lose the right to be on a grand jury,

24  and you lose the right to have in your possession or

25  constructive possession any kind of firearm, ammunition, or

1  other dangerous device as defined by federal law.  That's a

2  lifetime ban.

3      Do you understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And do you know that if you ever have

6  guns or ammunition or dangerous devices, that's another felony

7  for which you could be indicted, and if convicted, sent to

8  prison on those charges?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Okay.

11     The only exception is if the Secretary of Treasury of the

12  United States of America says that you, William Richard

13  Nielsen, can have firearms and ammunition.  And I just don't

14  think that's going to happen, so you need to assume that's a

15  lifetime ban.

16     Understood.

17         THE DEFENDANT:  Understood, sir.

18         THE COURT:  We talked about supervised release.  You

19  actually told me the range of supervised release, five years to

20  life, when we were talking about range of penalties.

21     Do you know what supervised release is?

22         THE DEFENDANT:  It's federal version of probation.

23         THE COURT:  Well, in a way.  But I think you're using

24  words that are -- are words of -- "probation" means you never

25  go to jail in the federal system and you're under supervision.

1   "Supervised release" means you go to prison, and when you get

2   out, you're on supervised release.  But it is a probation

3   officer and there are 15 standard conditions that are a part of

4   any sentence and then any special conditions.  And the

5   importance to you is that even though you've been in prison for

6   at least a minimum of ten years in the federal system, when you

7   get out, if you don't follow those rules, the judge finds out,

8   and then if there's no explanation, you end up with having your

9   supervised release revoked and being sent back to prison.

10       Do you understand that?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  All right.

13       Well, do you think you understand the consequences of

14   pleading guilty to the indictment in this case?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Have you talked to Mr. Donahoe about

17   sentencing and how that works in the federal court?

18           THE DEFENDANT:  Guidelines, yeah.

19           THE COURT:  So tell me in your understanding what's

20   the process?  How would we go about figuring out what the

21   sentence is?

22           THE DEFENDANT:  Number of crimes committed runs

23   across the top; sentencing guidelines and variance of time run

24   down the page.  To what we figured out, I am in the second

25   section across the top and sitting between 28 and 29 and 33

1   points going down on the sentencing guideline.

2          THE COURT:  Okay.

3       Well, that's pretty good for the first step.

4       So I think you have it down.  There is a presentence

5   report that's done.  And then in the course of preparing the

6   presentence report, they compute two numbers.  The first, as

7   you described, is the offense number.  That's the one that goes

8   down the left-hand side.  That comes right out of a book.  And

9   then that can go up or down depending upon specific conduct.

10  Ms. Peterson indicated at the beginning of this, and it's in

11  the plea agreement, that she would be moving for one extra

12  level off of that.  So you'd get three levels off, in all

13  likelihood, because of the acceptance of responsibility.  But

14  that number can go up and down for a multiplicity of reasons.

15  And once all of those mathematical adjustments are done, we get

16  the first number.  That's the total adjusted offense level.

17      Then the second number is your criminal history.  And that

18  involves, even though you said it was a sealed juvenile record,

19  what happens is that every encounter you've ever had with law

20  enforcement is scored.  And that is whether as a minor or as an

21  adult.  And whether it was a misdemeanor or a felony.  And then

22  each of those events is scored zero, one, two, or three points.

23  Then the points are totaled up, and they convert to one of six

24  criminal history categories, which is what you pointed out

25  going across the top.  And then, as I said, I go down to your

1  offense level, across to your criminal history, and where they

2  intersect gives a range of months.  That is a starting point

3  for trying to determine what is a sufficient-but-

4  not-greater-than-necessary sentence.

5      Okay?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  The next thing is we go through a

8  statute.  It's called 18 U.S. Code 3553(a).  And that statute

9  has got ten factors in it that have to be considered.  And so I

10 go through each of those knowing all that I know about you as

11 an individual, and try and determine:  How do they balance out?

12 One of the factors is the guideline range, but it's just a

13 starting point.  So after I've considered all of those

14 guidelines -- or excuse me, all of the factors in 3553(a), then

15 I say:  "This is what I think is a sufficient-but-

16 not-greater-than-necessary sentence."  That's the second step.

17 Are you still with me?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Then there's a third step.  Let's just

20 say, hypothetically, that I don't know what the numbers are for

21 criminal history category 2, if it's 28 or 29.  I don't know.

22 But let's assume it's 96 to a hundred and thirty months, just

23 hypothetically.  And I say:  "Okay.  Based on everything I

24 know, I'm going to go with the low end of the guidelines."

25 Well, then the third step comes in.  I can't go below ten

1    years, that's the mandatory minimum in the case.  So I cannot

2    go below the mandatory minimum sentence of ten years.

3         Do you understand that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  So the sentence could be at the low end

6    of the guidelines, at the high end of the guidelines, or

7    anywhere in between.  It could be lower than the guidelines or

8    it could be higher than the guidelines, all the way up to the

9    maximum allowed by statute.

10        Do you understand that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Okay.

13        Any question about the guidelines or sentencing or how the

14   system works?

15             THE DEFENDANT:  No, sir.

16             THE COURT:  Do you know there is no parole in the

17   federal system?  So whatever time you get, you have to do; you

18   don't get out early.

19             THE DEFENDANT:  I understand, sir.

20             THE COURT:  Did you know that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.

23        Well, do you have any question about anything we've talked

24   about?

25             THE DEFENDANT:  No, sir.

1              THE COURT:  Well, you're innocent as you stand here

2    right now.  And that presumption of innocence abides by you

3    until one of two things happens:  If you plead guilty, then you

4    lose the presumption of innocence and the right to a trial.

5    But if you persist and make the government prove the case, then

6    the only way that you'd lose the presumption of innocence is if

7    you go to trial and if a jury of 12 people unanimously agree

8    the government has proved your guilt beyond a reasonable doubt.

9         So what I want to do is go through rights you're going to

10   give up if you plead guilty.  Okay?

11              THE DEFENDANT:  Okay.

12              THE COURT:  So, the first thing is:  You have a right

13   to a trial.  Now, it can be a judge trial or it can be a jury

14   trial.  If it's a judge trial, you would have to waive your

15   constitutional right to a trial by jury in writing.

16   Mr. Donahoe would have to agree with that.  Ms. Peterson would

17   have to sign off on behalf of the -- on behalf of the

18   government.  And then I'd have to agree.  But if it's a judge

19   trial or a jury trial, the procedure's the same, the law is the

20   same, the evidence is the same, the only difference is,

21   basically, in a jury you have 12 people deciding your fate.  In

22   a judge trial, you have one.  That's me.  So I'm going to

23   assume you'd want to have a jury trial.  What we would do is

24   bring in somewhere between 40 and 45 people from the Missoula

25   Division of the court.  They would be randomly selected and

then they'd come into this courtroom and they'd all be sworn

in.  And then once they were sworn in, we would randomly select

28 of them to sit in the jury box and in the well of the court.

That would be the potential jury pool.  Then I ask them

questions.  And when I'm finished, Ms. Peterson asks them

questions.  And when she's finished, Mr. Donahoe asks them

questions.  And so when the three of us are all done

questioning the jury, that's called voir dire, I meet with the

lawyers right over here.  And the jury can see us, they can't

hear us.  And I ask the lawyers:  "Do either of you have a

challenge for cause to one or more of the jurors?"  If the

answer's yes, I say:  "Who and why?"  Then I ask the other

lawyer:  "What's your position?"  And when I've heard both

sides, I either grant the challenge for cause or I deny it.  If

I grant it, when we come back, then Beth tells the juror to

have a seat back behind the rail, and we randomly select from

the remaining people someone to fill his or her place.  And as

I said, there can be cause challenges to more than one juror.

Once the jury is passed for cause, then we have 28 people

sitting there.  And what we need to do is get down to 12.  The

way we get there is:  You have what's called ten peremptory

challenges.  The government has six.  And a peremptory

challenge means you can get rid of ten people on that

prospective panel for any reason you want, except it can't be

based on race, on gender, or religion.  The government can get

1  rid of six, but they're constrained in the same way.  So what

2  happens, then, is you exercise your ten, they exercise their

3  six.  Those 16 people are removed from the 28, and we end up

4  with a jury of 12 people.

5       But if you plead guilty, none of that happens.  There's no

6  trial, no jury, no jury selection, no challenges for cause, no

7  voir dire, no peremptory challenges.

8       Do you understand that?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Once that jury is seated, then

11  Ms. Peterson has a very heavy burden to prove your guilt beyond

12  a reasonable doubt, as I said, to all 12 jurors agreeing

13  unanimously.  To do that, she calls witnesses and presents

14  physical and documentary evidence.  And every time she calls a

15  witness, then Mr. Donahoe, acting on your behalf, has the right

16  to confront and cross-examine that person.  And we'd go through

17  that whole process until Ms. Peterson rests her case.

18       At that point, you can put on a defense.  You do not have

19  to prove you're innocent.  The government has to prove you're

20  guilty.  But if you have a defense and you want to put on

21  witnesses, they're called by Mr. Donahoe and cross-examined by

22  the government.  And we go through until all of your witnesses

23  have testified and all your evidence has been offered or

24  received.

25       Now, if you have somebody that you want to come to testify

1    on your behalf and they won't come voluntarily, you can invoke

2    the subpoena power of the court.  And what Mr. Donahoe does is

3    he asks for subpoenas.  I issue them.  The marshals serve them.

4    And the witnesses will be here to testify for you.

5          But if you plead guilty, none of that happens, because if

6    you plead guilty, Ms. Peterson doesn't have to prove one thing.

7    Your guilt will be established by your own sworn testimony here

8    in open court.  You don't have a right to see and hear the

9    witnesses.  You have no right to confront or cross-examine the

10   witnesses.  You have no right to defend yourself.  And you have

11   no right to have witnesses called here to testify about your

12   guilt, if you plead guilty.

13         Do you understand that?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Now, in a case like this, as in any case,

16   one of the real difficult problems that confronts the lawyer

17   and a person in your shoes is the issue of whether or not you

18   testify.  Because jurors want to hear what you have to say.

19   But there can be good reasons not to testify.  And under the

20   Constitution, you have an absolute right to testify if you want

21   to, and if you do, you're treated like any other witness.

22   You're confronted, cross-examined.  And Ms. Peterson would be

23   allowed to make any argument based on fair inferences from the

24   proof, including an argument that you're not believable if the

25   evidence supported that argument.

1      But unlike any other witness in a criminal case, as the

2  defendant, you have a right not to testify.  That's guaranteed

3  to you by the Constitution under the Fifth Amendment.  And if

4  you decide not to testify, then I tell the jury in legal

5  instructions that they can draw no adverse inference from your

6  decision not to testify.  And what that means is:  I usually

7  tell them after I'm all done with the legal stuff, what that

8  really means is:  "You can't go back to the jury room and say:

9  'Oh, well, he must be guilty or he must be hiding something

10  because he didn't testify.'"  They're not allowed to do that.

11  And the reason that's important is that at a trial, you have a

12  choice.  You can testify or remain silent.  But if you plead

13  guilty today, you don't have a choice.  You're going to have to

14  waive your right against self-incrimination to the limited

15  extent that you tell me facts that convince me you're guilty of

16  the offense charged in the indictment, which is coercion and

17  enticement of a minor.

18      Do you understand that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  So you do have a right to have a lawyer

21  at all stages of the proceeding, before a trial, during the

22  trial, if you were convicted, at sentencing, and then on any

23  appeal.  Here, if you -- even if you plead guilty, you still

24  retain the right to have Mr. Donahoe represent you at

25  sentencing.  And if the sentence is within the guidelines or

 1  below, you don't have a right to appeal.  Understood?

 2          THE DEFENDANT:  Yes, sir.

 3          THE COURT:  Do you have any question about your

 4  constitutional rights?

 5          THE DEFENDANT:  No, sir.

 6          THE COURT:  Do you know how important they are?

 7          THE DEFENDANT:  Yes, sir.

 8          THE COURT:  Knowing that, do you want to waive your

 9  constitutional rights and plead guilty, or do you want to

10  exercise them and go to trial?

11          THE DEFENDANT:  Plead guilty, sir.

12          THE COURT:  Okay.

13      I want you to listen up, because I'm going to ask

14  Ms. Peterson to tell you and me and Mr. Donahoe what the

15  government has to prove beyond a reasonable doubt before you

16  could be found guilty.  That's the elements of the offense.

17      Ms. Peterson.

18          MS. PETERSON:  Your Honor, the government would have

19  to prove, first, that the defendant knowingly used a facility

20  or means of interstate commerce to persuade, induce, entice, or

21  coerce an individual under the age of 18 to engage in a sexual

22  activity.  Second, that the defendant believed that such

23  individual was less than 18 years of age.  And third, that the

24  defendant could have been charged with a criminal offense for

25  engaging in specified sexual activity.

1          THE COURT:  All right.

2      Mr. Donahoe, is that a correct statement of the legal

3  elements of the offense?

4          MR. DONAHOE:  It is.

5          THE COURT:  All right.

6      Mr. Nielsen, did you hear what has to be proved?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  So why do you think you're guilty of

9  coercion and enticement of a minor?  What happened?

10          THE DEFENDANT:  Towards the end of December, I got on

11  a -- an adult personals chat line called Livelinks.  At the

12  time, I ended up receiving a message from Athena, the -- A.J.

13  And according to her profile, she said she was 18.  We got to

14  talking.  Exchanged numbers.  Started exchanging sex messages.

15  And then we started talking about meeting.

16      A day or two before she showed up, I had offered to help

17  her come up here sometime during spring break.  She said she

18  would have the money by then, if not sooner.

19      I said okay.

20      Roughly 24 hours later, I received a message stating she

21  was coming up to Montana.  And that she was actually 12 years

22  old.

23      When she got here, the physical impression that I had of

24  her was that she looked 18, she acted 18.  And due to some of

25  our discussions, I assumed that her saying she was 12 was

1  actually part of the role play she wanted to do.

2      Under those impressions, we went back to my apartment,

3  hung out for a little while.  And then engaged in several

4  rounds of sex over the course of the next four to five days

5  when I wasn't at my apartment.

6      Then on the morning of the 9th, I was told that her friend

7  had come up to Montana; that she couldn't find the apartment,

8  and that I was to meet her at the gas station up the street.

9  Upon going to the gas station, I was confronted by her mother,

10  who told me that she was Athena's friend there to see her.

11      Under that impression, I took her mother and the two other

12  people that were with her back to my apartment.  And Athena was

13  found naked in bed.  And after that, I was arrested and

14  incarcerated.

15          THE COURT:  Ms. Peterson, if you had to prove the

16  case, what would your proof be?

17          MS. PETERSON:  Your Honor, the defendant spoke to the

18  victim via a live chat line that's called Livelinks where

19  individuals meet and are able to chat through the telephone

20  lines.  The victim resides outside of the State of Montana.

21  The defendant resides in Missoula, Montana.  At first, the

22  defendant did believe that the victim was 18 years old.  But

23  she quickly disclosed that she was, in fact, 12 years old.  The

24  defendant and the girl exchanged phone numbers, and they began

25  sexting and having phone sex.  Nielsen asked the girl to come

1    to Montana and promised her drugs.  She did not know how to get

2    to Montana -- or I'm sorry, to Missoula.  And so the defendant

3    instructed her to take the bus.  He, in fact, called the bus

4    station, as did the victim, and provided her with bus schedule

5    information.

6         On January 4th of 2011, the victim stole money from her

7    mother's wallet and got on the bus, and she purchased the

8    ticket in the defendant's last name.  Because she was a minor,

9    she didn't want to be identified.  And she traveled to

10   Missoula.  The defendant picked her up at the bus station,

11   walked her over to his apartment, which was nearby.  And in the

12   next several days, they repeatedly engaged in sexual

13   intercourse.  During that time, he also provided her marijuana,

14   which he legally obtained using his medical marijuana card.

15             THE COURT:  All right.

16        Mr. Nielsen, did you hear what Mrs. Peterson said she

17   could prove.

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Did she say something you disagree with

20   or think was wrong?

21             THE DEFENDANT:  I did not hand over my medical

22   marijuana to Athena.  She got into it sometime after I had left

23   the second day and smoked through what little remainder I had

24   had that I had purchased two weeks prior.

25             THE COURT:  Does that -- other than that, anything

1    that she said that you thought was wrong or inaccurate?

2           THE DEFENDANT:  I did not promise to get Athena any

3    drugs.  Though, I did say if there was anything she liked, I

4    could make inquiries to my friends about acquiring.

5           THE COURT:  Does that make you want to change your

6    mind about pleading guilty?

7           THE DEFENDANT:  No, sir.

8           THE COURT:  Mr. Donahoe, other than the two things

9    mentioned by Mr. Nielsen, anything you heard that you thought

10   was wrong or inaccurate?

11          MR. DONAHOE:  Well, Your Honor, it is not clear to me

12   who made the arrangements to come.  We show a four-minute phone

13   call by A.J. to the Greyhound Bus Company, and assume that

14   there was information provided directly to her about travel

15   here to Montana in that phone call.

16      I do know that Mr. Nielsen says that his part in that was

17   texting the phone number of Greyhound to her.  So . . .

18      For what that's worth.

19          THE COURT:  Well, does that make any difference in

20   terms of your recommendation as to how Mr. Nielsen should

21   proceed?

22          MR. DONAHOE:  No, Your Honor.

23          THE COURT:  Well, I'm going to grant Mr. Donahoe's

24   motion to allow William Richard Nielsen to withdraw his not

25   guilty plea to the indictment, which is a violation of Title 18

1  U.S. Code charging coercion and enticement of a minor.  And

2  I'll ask you now, William Richard Nielsen, how do you plead to

3  the indictment, guilty or not guilty?

4           THE DEFENDANT:  Guilty.

5           THE COURT:  It's my finding in the case of the United

6  States of America versus William Richard Nielsen, Criminal

7  11-08-M-DWM, that Mr. Nielsen is fully aware of the nature of

8  the charges and the consequences of the plea, including the

9  fact that there is a mandatory minimum plea, and the fact that

10 if he is sentenced within or below the advisory guideline

11 range, all the way down to the minimum ten-year sentence, that

12 he is waiving his right to appeal or to collaterally attack any

13 imposition of a sentence in this case.  His plea of guilty is a

14 knowing and voluntary plea that is supported by an independent

15 basis in fact; that establishes each of the essential elements

16 of the offense; and Mr. Nielsen, I'm quite confident that if

17 Ms. Peterson was required to put the proof to a jury in your

18 case that she said she had, there's no doubt they would find

19 you were guilty, and they'd do so beyond a reasonable doubt.

20 I'm also convinced based upon your own sworn testimony here in

21 open court, that you are, indeed, guilty of the offense

22 charged.  And consequently, your plea of guilty is accepted.

23 And you now are adjudged guilty of the crime of coercion and

24 enticement of a minor.

25      The next thing that happens is that there's a presentence

1    investigation report that's prepared.  And you'll have to meet

2    with the probation office, Mr. Nielsen.

3        Do you understand that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  When you meet with them, they're going to

6    ask you questions, you have to give them truthful, honest, and

7    candid answers.

8        Is that clear?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  The reason I am telling you that is that

11   if you lie to them or try and mislead them, that could be

12   construed as obstructing justice.  And if it was so construed,

13   then that would mean that that first number would go up.  And

14   if the first number goes up, then in all likelihood, the

15   starting point for determining what is a sufficient sentence

16   would be higher.

17       Do you understand that?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Now, having told you you have to give

20   truthful, honest, and candid answers to the probation office

21   when they ask you questions, keep this in mind:  You have the

22   absolute and unfettered right to rely on the advice that

23   Mr. Donahoe gives you.  And you have the absolute right to have

24   him there any time you're asked questions.  And if he's there

25   and he says:  "Will, don't answer that question," you can

 1    refuse to answer the question and be assured that would not be

 2    held against you in either the preparation of the presentence

 3    report or in any imposition of sentence.

 4         Is that clear?

 5              THE DEFENDANT:  Yes, sir.

 6              THE COURT:  What happens, Mr. Nielsen, is that all

 7    the information you give them, they're going to verify, and

 8    then any information they get from third parties, family,

 9    friends, they'll verify that information, too.  They'll do a

10    very thorough background investigation.  It will tell me just

11    about everything about you.  And when they get finished,

12    they'll type up a report, the presentence investigation report,

13    and they'll send it to Ms. Peterson and to Mr. Donahoe.  You'll

14    have a chance to read it over then.  Read it over carefully.

15    And there's two reasons why you have to read it.  One, the

16    rules require that you read that report in its entirety.  And

17    that's part of the rules.  And I'll ask at sentencing:  "Did

18    you read that in its entirety?"

19         The second part of it is, it's important that you read the

20    whole thing, because if there are mistakes, you have an

21    opportunity to get those corrected with the probation office

22    and with the U.S. Attorney's Office.  And you can do that on an

23    informal basis.  Will you do that?

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  And then sometimes that doesn't work out.

1   And if there are disputes of fact or law at the time of

2   sentencing, I would resolve those before the imposition of

3   sentence.

4       At sentencing, you'll be given a chance to speak on your

5   own behalf.  Mr. Donahoe will be allowed to allocute for you.

6   And then Ms. Peterson would be allowed to speak within the four

7   corners of the plea agreement.  Given the nature of the

8   offense, any victim would have a right to speak if she -- given

9   the fact that it's a minor, if her mother had a desire or her

10  father had a desire to speak.

11      After imposing sentence, I will tell you whether or not

12  you have a right to appeal.

13      I'm going to set sentencing for July 20th, 2011, at ten

14  o'clock in the morning here in the Russell Smith Courthouse.

15      Ms. Peterson, is there anything further from the

16  government?

17          MS. PETERSON:  No, Your Honor.

18      Thank you.

19          THE COURT:  Mr. Donahoe.

20          MR. DONAHOE:  Your Honor, if there's a possibility,

21  could we please ask the court for him to be held over here for

22  a few days so we could get the PSR interview done.  We expect

23  he's going to be taken back to Shelby.

24          THE COURT:  What's the deal, Marvin?

25          THE MARSHAL:  I'll have to check on that.  I'm not

1   sure exactly.

2           THE COURT:  It sure would be better if he's here,

3   held over for two or three days.

4           THE MARSHAL:  Yes, sir.

5           THE COURT:  Okay.

6       So I'm going to remand you to the custody of the United

7   States Marshals and ask that you be kept here until the

8   probation office has the opportunity to complete their

9   interviews.

10      Thank you, counsel.

11      If there's nothing further, we'll be in recess.

12           (The proceedings in this matter were adjourned at

13           12:01 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2    STATE OF MONTANA  )
                       :  SS
3    County of Cascade )

4

5        I, TINA C. BRILZ, RPR, FCRR, Official Court Reporter and

6    Notary Public of the State of Montana residing at Great Falls,

7    Montana, do hereby certify as follows:

8        That the foregoing change of plea hearing was reported by

9    me on April 5, 2011, at 11:11 a.m. in Courtroom No. 217 in the

10   Russell Smith Courthouse in Missoula, Montana.

11       That the foregoing thirty-nine (39) pages of typewritten

12   material constitute a true and accurate transcription of my

13   stenographic notes which were reduced to writing by means of

14   computer-aided transcription.

15       I further certify that I am not an attorney nor counsel of

16   any of the parties nor a relative or employee of any attorney

17   or counsel connected with this action or otherwise interested

18   in the event thereof.

19       IN WITNESS WHEREOF, I have hereunto set my hand and

20   affixed my Official Seal on this 2nd day of August, 2011.

21

22                              /s/ Tina C. Brilz_____
                                TINA C. BRILZ
23                              REGISTERED PROFESSIONAL REPORTER
                                NOTARY PUBLIC for the State of
24                              Montana residing at Great Falls,
                                Montana.  My commission expires
25                              October 11, 2011.

## $

**$100** [1] - 11:16
**$250,000** [1] - 11:14

## '

**'04** [1] - 20:9
**'05** [1] - 20:10
**'oh** [1] - 30:9

## 1

**11-08-M-DWM** [1] - 36:7
**12** [11] - 14:4, 15:2, 26:7, 26:21, 27:20, 28:4, 28:12, 32:21, 32:25, 33:23
**12-year-old** [1] - 10:24
**12:01** [1] - 40:13
**15** [1] - 22:3
**15th** [1] - 10:20
**16** [1] - 28:3
**18** [11] - 11:3, 12:5, 14:3, 24:8, 31:21, 31:23, 32:13, 32:24, 33:22, 35:25

## 2

**2** [1] - 24:21
**2010** [1] - 10:20
**2011** [4] - 7:2, 10:20, 34:6, 39:13
**20th** [1] - 39:13
**2255** [1] - 19:6
**24** [1] - 32:20
**2422(b)** [1] - 11:4
**28** [6] - 19:5, 22:25, 24:21, 27:3, 27:19, 28:3
**29** [3] - 14:10, 22:25, 24:21

## 3

**3/29/11** [1] - 15:4
**33** [1] - 22:25
**3553(a** [1] - 24:14
**3553(a)** [1] - 24:8
**3C1.1** [1] - 4:12

## 4

**40** [1] - 26:24

**45** [1] - 26:24
**45-5-503** [1] - 11:3
**4th** [1] - 34:6

## 5

**56** [1] - 13:25
**5th** [1] - 10:20

## 8

**8** [4] - 18:5, 18:9, 19:4

## 9

**96** [1] - 24:22
**9th** [1] - 33:6

## A

**A.J** [2] - 32:12, 35:13
**abides** [1] - 26:2
**ability** [2] - 12:1, 12:2
**able** [2] - 8:23, 33:19
**absent** [2] - 13:16, 13:18
**absolute** [3] - 29:20, 37:22, 37:23
**accept** [2] - 11:22, 18:16
**acceptance** [2] - 4:11, 23:13
**accepted** [2] - 16:18, 36:22
**according** [2] - 5:4, 32:13
**acquiring** [1] - 35:4
**acted** [1] - 32:24
**acting** [1] - 28:15
**activity** [2] - 10:25, 31:22, 31:25
**actual** [2] - 13:9, 13:16
**add** [1] - 16:11
**addicted** [1] - 7:18
**addition** [1] - 20:20
**adjourned** [1] - 40:12
**adjudged** [1] - 36:23
**adjusted** [1] - 23:16
**adjustments** [1] - 23:15
**admit** [2] - 3:16, 3:24
**admitting** [1] - 4:2
**adult** [2] - 23:21, 32:11
**adverse** [1] - 30:5
**advice** [6] - 9:16, 14:12, 16:19, 17:12,
17:14, 37:22
**advised** [1] - 16:14
**advisory** [3] - 18:23, 19:8, 36:10
**age** [3] - 12:5, 31:21, 31:23
**agree** [3] - 26:7, 26:16, 26:18
**agreed** [8] - 3:16, 4:4, 4:7, 4:8, 4:10, 4:13, 4:15, 16:2
**agreeing** [1] - 28:12
**agreement** [22] - 3:11, 3:14, 3:23, 4:3, 4:22, 14:25, 15:11, 15:13, 15:25, 16:4, 16:5, 16:9, 17:3, 17:23, 18:3, 18:4, 18:15, 18:17, 18:22, 23:11, 39:7
**alcohol** [1] - 7:19
**allegation** [2] - 3:18, 4:1
**allocute** [1] - 39:5
**allow** [1] - 35:24
**allowed** [5] - 25:9, 29:23, 30:10, 39:5, 39:6
**Amendment** [1] - 30:3
**America** [3] - 3:6, 21:12, 36:6
**American** [2] - 9:17
**ammunition** [3] - 20:25, 21:6, 21:13
**Annotated** [1] - 11:3
**answer** [4] - 9:1, 37:25, 38:1
**answer's** [1] - 27:12
**answers** [2] - 37:7, 37:20
**anxiety** [1] - 7:15
**apartment** [5] - 33:2, 33:5, 33:7, 33:12, 34:11
**appeal** [9] - 4:13, 18:10, 18:24, 19:10, 19:19, 30:23, 31:1, 36:12, 39:12
**approach** [1] - 4:25
**arbitrarily** [1] - 18:10
**argument** [3] - 29:23, 29:24, 29:25
**arguments** [1] - 16:23
**arrangements** [1] - 35:12
**arrested** [4] - 7:8, 7:9, 8:12, 33:13
**arrival** [1] - 14:3
**arrived** [1] - 3:10
**assessment** [1] -

11:17
**assume** [5] - 16:1, 21:14, 24:22, 26:23, 35:13
**assumed** [1] - 32:25
**assured** [1] - 38:1
**Athena** [4] - 32:12, 33:12, 34:22, 35:2
**Athena's** [1] - 33:10
**attack** [1] - 36:12
**attorney** [2] - 3:25, 10:16
**Attorney** [1] - 17:18
**Attorney's** [1] - 38:22
**authorities** [1] - 17:17
**aware** [1] - 36:7

## B

**background** [1] - 38:10
**bad** [1] - 18:18
**balance** [1] - 24:11
**ban** [2] - 21:2, 21:15
**barred** [1] - 16:17
**based** [5] - 14:22, 24:23, 27:25, 29:23, 36:20
**basis** [4] - 13:2, 13:5, 36:15, 38:23
**bear** [1] - 13:18
**bearing** [1] - 9:11
**become** [1] - 9:17
**bed** [1] - 33:13
**began** [1] - 33:24
**beginning** [2] - 6:3, 23:10
**behalf** [6] - 5:4, 26:17, 28:15, 29:1, 39:5
**behind** [1] - 27:16
**believable** [1] - 29:24
**below** [6] - 4:14, 18:23, 24:25, 25:2, 31:1, 36:10
**Beth** [1] - 27:15
**better** [1] - 40:2
**between** [6] - 10:15, 10:20, 13:10, 22:25, 25:7, 26:24
**beyond** [4] - 26:8, 28:11, 31:15, 36:19
**blue** [1] - 15:3
**book** [1] - 23:8
**bound** [1] - 19:15
**box** [1] - 27:3
**break** [1] - 32:17
**bring** [1] - 26:24
**brought** [1] - 13:17
**burden** [1] - 28:11

**Bus** [1] - 35:13
**bus** [5] - 34:3, 34:4, 34:7, 34:10

## C

**calendar** [1] - 3:4
**candid** [2] - 37:7, 37:20
**cannot** [2] - 18:10, 25:1
**card** [1] - 34:14
**care** [1] - 7:22
**carefully** [1] - 38:14
**case** [23] - 3:11, 9:12, 10:11, 11:10, 12:17, 12:21, 13:8, 13:11, 14:5, 15:1, 16:13, 22:14, 25:1, 26:5, 28:17, 29:15, 30:1, 33:16, 36:5, 36:13, 36:18
**categories** [1] - 23:24
**category** [1] - 24:21
**certain** [1] - 20:17
**cetera** [2] - 16:24
**challenge** [6] - 19:4, 19:10, 19:19, 27:11, 27:14, 27:23
**challenges** [4] - 27:18, 27:22, 28:6, 28:7
**chance** [2] - 38:14, 39:4
**change** [5] - 3:5, 3:17, 8:16, 14:12, 35:5
**changing** [1] - 9:10
**charge** [4] - 3:17, 12:16, 12:24, 16:24
**charged** [6] - 11:1, 11:5, 12:11, 30:16, 31:24, 36:22
**charges** [6] - 4:5, 9:18, 10:19, 21:8, 36:8
**charging** [1] - 36:1
**chat** [3] - 32:11, 33:18, 33:19
**chats** [1] - 13:13
**check** [1] - 39:25
**children** [2] - 5:25, 12:4
**choice** [2] - 30:12, 30:13
**Circuit** [1] - 13:14
**circumstantial** [1] - 13:23
**circumstantially** [2] - 13:17, 14:7

**citizen** [1] - 9:17
**citizenship** [1] - 9:11
**civil** [1] - 20:20
**classes** [1] - 6:19
**clear** [3] - 35:11, 37:8, 38:4
**CLERK** [1] - 3:5
**client** [1] - 4:25
**CM** [1] - 6:14
**CMR** [1] - 6:7
**Code** [5] - 11:2, 11:3, 19:6, 24:8, 36:1
**coerce** [1] - 10:24, 31:21
**coercion** [7] - 8:13, 11:7, 13:17, 30:16, 32:9, 36:1, 36:23
**collateral** [4] - 11:20, 19:5, 19:19, 20:19
**collaterally** [1] - 36:12
**college** [1] - 6:4
**coming** [1] - 32:21
**commerce** [2] - 10:23, 31:20
**commit** [1] - 3:21
**committed** [1] - 22:22
**Company** [1] - 35:13
**complete** [2] - 4:8, 40:8
**completed** [1] - 14:7
**comply** [2] - 11:25, 12:10
**compute** [1] - 23:6
**computer** [1] - 3:20
**concede** [1] - 14:3
**concepts** [1] - 15:11
**concern** [3] - 9:13, 13:1, 13:19
**concerning** [1] - 16:24
**condition** [2] - 8:7
**conditions** [2] - 22:3, 22:4
**conduct** [1] - 23:9
**confident** [1] - 36:16
**confront** [2] - 28:16, 29:9
**confronted** [3] - 14:9, 29:22, 33:9
**confronts** [1] - 29:16
**conrad** [1] - 6:6
**Conrad** [2] - 6:7, 6:9
**consent** [4] - 11:2, 11:6, 16:16, 17:9
**consequences** [4] - 11:20, 20:19, 22:13, 36:8
**consequently** [1] - 36:22
**considered** [2] - 24:9,

24:13
**Constitution** [2] - 29:20, 30:3
**constitutional** [3] - 26:15, 31:4, 31:9
**constrained** [1] - 28:1
**constructive** [1] - 10:25
**construed** [1] - 37:12
**contact** [1] - 13:24
**contained** [1] - 12:24
**control** [1] - 17:16
**convert** [1] - 23:23
**convicted** [3] - 14:8, 21:7, 30:22
**conviction** [3] - 19:10, 19:20, 20:6
**convictions** [1] - 20:1
**convince** [1] - 30:15
**convinced** [1] - 36:20
**copy** [2] - 8:18, 14:25
**corner** [1] - 15:19
**corners** [1] - 39:7
**corpus** [2] - 19:5, 19:11
**correct** [2] - 5:19, 32:2
**corrected** [1] - 38:21
**counsel** [1] - 40:10
**counselor** [3] - 7:10, 7:14, 7:16
**counter** [1] - 8:3
**couple** [4] - 10:10, 13:25, 18:3, 19:24
**course** [4] - 5:8, 19:24, 23:5, 33:4
**courses** [1] - 6:3
**COURT** [135] - 3:3, 3:5, 3:8, 3:10, 3:13, 4:17, 4:21, 4:24, 5:7, 5:13, 5:16, 5:19, 5:21, 5:23, 5:25, 6:2, 6:5, 6:8, 6:11, 6:16, 6:21, 6:25, 7:2, 7:4, 7:6, 7:8, 7:10, 7:13, 7:17, 7:21, 7:24, 8:2, 8:5, 8:10, 8:14, 8:17, 8:20, 8:23, 9:1, 9:4, 9:8, 9:13, 9:19, 9:21, 9:23, 10:2, 10:5, 10:8, 10:14, 10:18, 11:8, 11:12, 11:16, 11:20, 12:8, 12:14, 12:19, 12:23, 13:4, 14:12, 14:15, 14:18, 14:21, 14:25, 15:7, 15:10, 15:15, 15:17, 15:21, 15:24, 16:4, 16:8, 16:12, 16:21, 17:12, 17:15, 17:21, 17:25, 18:2, 18:8,

18:13, 19:3, 19:14, 19:23, 20:4, 20:6, 20:8, 20:11, 20:13, 20:16, 21:5, 21:10, 21:18, 21:23, 22:12, 22:16, 22:19, 23:2, 24:7, 24:19, 25:5, 25:12, 25:16, 25:20, 25:22, 26:1, 26:12, 28:10, 29:15, 30:20, 31:3, 31:6, 31:8, 31:12, 32:1, 32:5, 32:8, 33:15, 34:15, 34:19, 34:25, 35:5, 35:8, 35:19, 35:23, 36:5, 37:5, 37:10, 37:19, 38:6, 38:25, 39:19, 39:24, 40:2, 40:5
**court** [12] - 6:13, 12:11, 13:21, 14:11, 16:19, 22:17, 26:25, 27:3, 29:2, 29:8, 36:21, 39:21
**Courthouse** [1] - 39:14
**courtroom** [1] - 27:1
**CR-11-8-M-DWM** [1] - 3:6
**credits** [1] - 6:20
**crime** [4] - 3:21, 13:14, 16:18, 36:23
**crimes** [2] - 12:12, 22:22
**Criminal** [2] - 18:16, 36:6
**criminal** [7] - 20:1, 23:17, 23:24, 24:1, 24:21, 30:1, 31:24
**cross** [4] - 28:16, 28:21, 29:9, 29:22
**cross-examine** [2] - 28:16, 29:9
**cross-examined** [2] - 28:21, 29:22
**custody** [1] - 40:6

**D**

**dangerous** [2] - 21:1, 21:6
**days** [5] - 13:25, 33:4, 34:12, 39:22, 40:3
**deal** [2] - 13:20, 39:24
**December** [2] - 10:20, 32:10
**decide** [1] - 30:4
**deciding** [1] - 26:21
**decision** [1] - 30:6

**defend** [1] - 29:10
**DEFENDANT** [113] - 5:12, 5:15, 5:18, 5:20, 5:22, 5:24, 6:1, 6:3, 6:6, 6:10, 6:13, 6:18, 6:23, 7:1, 7:3, 7:5, 7:7, 7:9, 7:12, 7:15, 7:20, 7:23, 8:1, 8:4, 8:9, 8:12, 8:16, 8:19, 8:22, 8:25, 9:3, 9:7, 9:10, 9:14, 9:20, 9:22, 10:1, 10:4, 10:7, 10:12, 10:17, 11:6, 11:11, 11:13, 11:19, 12:7, 12:13, 12:18, 12:22, 14:17, 14:20, 14:24, 15:6, 15:9, 15:14, 15:16, 15:20, 15:22, 16:3, 16:7, 16:10, 17:11, 17:14, 17:20, 17:24, 18:1, 18:7, 18:10, 19:2, 19:13, 19:22, 20:2, 20:5, 20:7, 20:9, 20:12, 20:15, 21:4, 21:9, 21:17, 21:22, 22:11, 22:15, 22:18, 22:22, 24:6, 24:18, 25:4, 25:11, 25:15, 25:19, 25:21, 25:25, 26:11, 28:9, 29:14, 30:19, 31:2, 31:5, 31:7, 31:11, 32:7, 32:10, 34:18, 34:21, 35:2, 35:7, 36:4, 37:4, 37:9, 37:18, 38:5, 38:24
**defendant** [18] - 3:16, 3:23, 4:7, 4:10, 4:12, 4:13, 10:21, 15:3, 30:2, 31:19, 31:22, 31:24, 33:17, 33:21, 33:22, 33:24, 34:2, 34:10
**defendant's** [1] - 34:8
**defense** [3] - 3:25, 28:18, 28:20
**defenses** [1] - 12:24
**defined** [1] - 21:1
**deny** [1] - 27:14
**dependent** [1] - 5:25
**depression** [2] - 6:24, 7:15
**described** [1] - 23:7
**desire** [2] - 39:9, 39:10
**detail** [1] - 11:21
**details** [1] - 17:5
**determination** [3] - 16:22, 16:25, 18:24

**determine** [2] - 24:3, 24:11
**determined** [2] - 4:16, 19:9
**determining** [1] - 37:15
**device** [1] - 21:1
**devices** [1] - 21:6
**difference** [2] - 26:20, 35:19
**different** [1] - 12:11
**difficult** [1] - 29:16
**dire** [2] - 27:8, 28:7
**direct** [2] - 19:9, 19:19
**directly** [2] - 13:12, 35:14
**disagree** [1] - 34:19
**discharged** [1] - 20:14
**disclose** [1] - 13:9
**disclosed** [1] - 33:23
**discovery** [1] - 13:8
**discuss** [2] - 10:10, 15:12
**discussed** [3] - 10:12, 10:15, 14:16
**discussion** [1] - 17:4
**discussions** [2] - 3:24, 32:25
**diseases** [1] - 4:8
**dismiss** [1] - 4:1
**disputes** [1] - 39:1
**District** [1] - 10:21
**Division** [1] - 26:25
**doctor** [1] - 7:22
**document** [2] - 15:1, 15:7
**documentary** [1] - 28:14
**documents** [1] - 3:22
**Donahoe** [25] - 4:19, 8:21, 9:1, 9:25, 10:2, 12:21, 12:23, 14:16, 17:3, 17:17, 18:19, 22:16, 26:16, 27:6, 28:15, 28:21, 29:2, 30:24, 31:14, 32:2, 35:8, 37:23, 38:13, 39:5, 39:19
**DONAHOE** [12] - 4:20, 4:23, 9:15, 13:1, 13:5, 14:14, 16:11, 16:13, 32:4, 35:11, 35:22, 39:20
**Donahoe's** [1] - 35:23
**done** [5] - 23:5, 23:15, 27:7, 30:7, 39:22
**doubt** [5] - 26:8, 28:12, 31:15, 36:18, 36:19
**down** [9] - 22:24, 23:1,

23:4, 23:8, 23:9, 23:14, 23:25, 27:20, 36:11
**Draconian** [1] - 12:9
**draw** [1] - 30:5
**drugs** [2] - 34:1, 35:3
**due** [2] - 6:13, 32:24
**duly** [1] - 5:4
**during** [5] - 5:8, 19:24, 30:21, 32:17, 34:13

## E

**early** [1] - 25:18
**education** [1] - 6:2
**either** [7] - 5:9, 7:18, 8:2, 12:11, 27:10, 27:14, 38:2
**elements** [3] - 31:16, 32:3, 36:15
**encounter** [1] - 23:19
**end** [8] - 12:10, 14:1, 22:8, 24:24, 25:5, 25:6, 28:3, 32:10
**ended** [1] - 32:12
**enforcement** [1] - 23:20
**engage** [2] - 10:25, 31:21
**engaged** [2] - 33:3, 34:12
**engaging** [1] - 31:25
**enter** [1] - 17:23
**entice** [2] - 10:23, 31:20
**enticement** [7] - 8:13, 11:7, 30:17, 32:9, 36:1, 36:24
**entire** [4] - 14:5, 15:7, 16:5, 18:2
**entirety** [2] - 38:16, 38:18
**essence** [2] - 3:14, 4:21
**essential** [1] - 36:15
**established** [1] - 29:7
**establishes** [1] - 36:15
**estimate** [1] - 16:14
**et** [2] - 16:24
**evaluation** [1] - 4:9
**events** [1] - 23:22
**evidence** [4] - 26:20, 28:14, 28:23, 29:25
**exactly** [1] - 40:1
**examine** [2] - 28:16, 29:9
**examined** [3] - 5:5, 28:21, 29:22

**except** [1] - 27:24
**exception** [2] - 19:14, 21:11
**exchanged** [2] - 32:14, 33:24
**exchanging** [1] - 32:14
**excuse** [1] - 24:14
**exercise** [3] - 28:2, 31:10
**expect** [1] - 39:22
**explain** [1] - 8:23
**explained** [4] - 9:11, 13:21, 17:4, 17:5
**explanation** [1] - 22:8
**expressed** [2] - 17:6, 17:9
**extent** [1] - 30:15
**extra** [1] - 23:11
**extraordinary** [1] - 16:19

## F

**facility** [2] - 10:22, 31:19
**fact** [8] - 4:1, 33:23, 34:3, 36:9, 36:15, 39:1, 39:9
**factor** [1] - 12:3
**factors** [3] - 24:9, 24:12, 24:14
**facts** [1] - 30:15
**factual** [5] - 9:5, 12:24, 13:2, 13:5, 16:23
**fail** [1] - 12:10
**failure** [2] - 20:2, 20:4
**fair** [2] - 16:1, 29:23
**Falls** [4] - 6:6, 6:7, 6:12, 6:14
**false** [2] - 5:9, 5:11
**family** [3] - 6:11, 17:25, 38:8
**fate** [1] - 26:21
**father** [1] - 39:10
**federal** [8] - 11:25, 12:11, 21:1, 21:22, 21:25, 22:6, 22:17, 25:17
**felony** [3] - 20:1, 21:6, 23:21
**few** [2] - 6:3, 39:22
**Fifth** [1] - 30:3
**figured** [1] - 22:24
**figuring** [1] - 22:20
**file** [1] - 20:3
**fill** [1] - 27:17
**fine** [1] - 11:14

**finished** [3] - 27:5, 27:6, 38:11
**firearm** [1] - 21:25
**firearms** [1] - 21:13
**first** [9] - 5:4, 23:3, 23:6, 23:16, 26:12, 31:19, 33:21, 37:13, 37:14
**five** [4] - 6:20, 11:15, 21:19, 33:4
**follow** [2] - 11:24, 22:7
**following** [1] - 3:1
**follows** [1] - 5:5
**foreign** [1] - 10:23
**forfeiture** [2] - 3:18, 4:1
**forward** [1] - 14:18
**four** [4] - 5:22, 33:4, 35:12, 39:6
**four-minute** [1] - 35:12
**free** [1] - 4:5
**Freeman** [1] - 9:15
**friend** [2] - 33:6, 33:10
**friends** [2] - 35:4, 38:9
**front** [1] - 14:1
**full** [1] - 5:13
**fully** [1] - 36:7

## G

**gas** [2] - 33:8, 33:9
**GED** [3] - 6:3, 6:17, 6:18
**gender** [1] - 27:25
**girl** [3] - 10:24, 33:24, 33:25
**given** [4] - 16:20, 39:4, 39:7, 39:8
**government** [13] - 3:25, 4:4, 4:9, 26:5, 26:8, 26:18, 27:22, 27:25, 28:19, 28:22, 31:15, 31:18, 39:16
**government's** [1] - 13:7
**grand** [2] - 10:19, 20:23
**grant** [3] - 27:14, 27:15, 35:23
**Great** [4] - 6:6, 6:7, 6:12, 6:14
**greater** [2] - 24:4, 24:16
**Greyhound** [2] - 35:13, 35:17
**guaranteed** [1] - 30:2
**guess** [3] - 13:3, 13:18, 14:4

**guideline** [6] - 4:14, 18:23, 19:8, 23:1, 24:12, 36:10
**guidelines** [12] - 4:11, 19:9, 22:18, 22:23, 24:14, 24:24, 25:6, 25:7, 25:8, 25:13, 30:25
**guilt** [4] - 26:8, 28:11, 29:7, 29:12
**guilty** [33] - 3:16, 11:21, 14:19, 14:22, 18:11, 20:18, 20:20, 22:14, 26:3, 26:10, 28:5, 28:20, 29:5, 29:6, 29:12, 30:9, 30:13, 30:15, 30:23, 31:9, 31:11, 31:16, 32:8, 35:6, 35:25, 36:3, 36:4, 36:13, 36:19, 36:21, 36:22, 36:23
**guns** [1] - 21:6

## H

**habeas** [2] - 19:5, 19:11
**half** [1] - 6:10
**hand** [4] - 5:1, 15:19, 23:8, 34:21
**handled** [1] - 13:11
**Health** [1] - 7:5
**hear** [5] - 27:10, 29:8, 29:18, 32:6, 34:16
**heard** [2] - 27:13, 35:9
**heavy** [1] - 28:11
**held** [3] - 38:2, 39:21, 40:3
**help** [1] - 32:16
**hiding** [1] - 30:9
**high** [2] - 6:5, 25:6
**High** [6] - 6:6, 6:7, 6:9, 6:14
**higher** [2] - 25:8, 37:16
**Hills** [3] - 6:7, 6:15, 6:16
**history** [4] - 23:17, 23:24, 24:1, 24:21
**hold** [1] - 20:22
**honest** [2] - 37:6, 37:20
**Honor** [20] - 3:9, 3:12, 3:15, 3:18, 3:25, 4:20, 9:15, 10:13, 13:1, 13:5, 14:6, 14:9, 14:24, 16:11, 31:18, 33:17, 35:11,

35:22, 39:17, 39:20
**hours** [2] - 13:25, 32:20
**housing** [1] - 12:2
**hundred** [1] - 24:22
**hung** [1] - 33:3
**hypothetically** [2] - 24:20, 24:23

## I

**ideas** [1] - 15:11
**identified** [1] - 34:9
**illness** [1] - 6:22
**impact** [2] - 12:1, 12:2
**impervious** [1] - 9:18
**importance** [1] - 22:5
**important** [3] - 30:11, 31:6, 38:19
**imposing** [1] - 39:11
**imposition** [3] - 36:13, 38:3, 39:2
**impression** [2] - 32:23, 33:11
**impressions** [1] - 33:2
**imprisonment** [1] - 11:14
**inaccurate** [2] - 35:1, 35:10
**incarcerated** [2] - 7:23, 33:14
**inclined** [1] - 14:6
**included** [1] - 3:19
**including** [3] - 11:14, 29:24, 36:8
**incrimination** [1] - 30:14
**indeed** [1] - 36:21
**independent** [1] - 36:14
**indicated** [1] - 23:10
**indicted** [2] - 8:13, 21:7
**indictment** [3] - 3:17, 3:19, 8:18, 10:9, 10:19, 12:25, 22:14, 30:16, 35:25, 36:3
**individual** [3] - 24:11, 31:21, 31:23
**individuals** [2] - 13:24, 33:19
**induce** [2] - 10:23, 31:20
**inference** [1] - 30:5
**inferences** [1] - 29:23
**informal** [1] - 38:23
**information** [5] - 34:5, 35:14, 38:7, 38:8, 38:9

**initial** [1] - 15:18
**initials** [1] - 16:1
**ink** [1] - 15:3
**innocence** [3] - 26:2, 26:4, 26:6
**innocent** [2] - 26:1, 28:19
**inquiries** [1] - 35:4
**instructed** [2] - 14:7, 34:3
**instructions** [1] - 30:5
**intent** [1] - 14:8
**intents** [1] - 19:18
**intercourse** [5] - 11:2, 11:6, 16:15, 17:8, 34:13
**intersect** [1] - 24:2
**interstate** [2] - 10:22, 31:20
**interview** [1] - 39:22
**interviews** [1] - 40:9
**investigation** [3] - 37:1, 38:10, 38:12
**invoke** [2] - 20:17, 29:1
**involve** [1] - 20:20
**involves** [1] - 23:18
**issue** [2] - 29:3, 29:17
**issues** [1] - 9:5
**items** [2] - 3:19, 3:21
**itself** [1] - 18:15

**J**

**jail** [2] - 10:3, 21:25
**jailhouse** [2] - 9:16, 10:5
**January** [4] - 7:1, 7:2, 10:20, 34:6
**jeopardy** [2] - 16:15, 17:6
**job** [1] - 7:16
**judge** [5] - 22:7, 26:13, 26:14, 26:18, 26:22
**Judge** [1] - 4:3
**July** [1] - 39:13
**June** [1] - 20:10
**juror** [2] - 27:15, 27:18
**jurors** [3] - 27:11, 28:12, 29:18
**jury** [22] - 10:19, 14:6, 20:23, 26:7, 26:13, 26:15, 26:19, 26:21, 26:23, 27:3, 27:4, 27:8, 27:9, 27:19, 28:4, 28:6, 28:10, 30:4, 30:8, 36:17
**justice** [2] - 4:12,

37:12
**juvenile** [3] - 6:13, 20:3, 23:18

**K**

**keep** [2] - 8:8, 37:21
**kept** [1] - 40:7
**kind** [3] - 6:22, 9:15, 20:25
**knowing** [3] - 24:10, 31:8, 36:14
**knowingly** [2] - 10:23, 31:19
**knowledge** [1] - 14:23

**L**

**lady** [1] - 13:10
**last** [2] - 5:16, 34:8
**latter** [1] - 19:14
**law** [7] - 5:4, 16:14, 20:16, 21:1, 23:19, 26:19, 39:1
**laws** [3] - 12:1, 12:9, 12:10
**lawyer** [6] - 9:25, 10:3, 15:12, 27:13, 29:16, 30:20
**lawyers** [3] - 10:5, 27:9, 27:10
**least** [2] - 13:14, 22:6
**lectern** [1] - 4:25
**left** [2] - 23:8, 34:22
**left-hand** [1] - 23:8
**legal** [7] - 8:24, 9:5, 10:6, 12:24, 30:4, 30:7, 32:2
**legally** [1] - 34:14
**less** [1] - 31:23
**level** [3] - 23:12, 23:16, 24:1
**levels** [1] - 23:12
**liberty** [1] - 20:21
**lie** [1] - 37:11
**life** [3] - 11:13, 11:24, 21:20
**lifetime** [3] - 11:15, 21:2, 21:15
**likelihood** [2] - 23:13, 37:14
**limited** [1] - 30:14
**line** [2] - 32:11, 33:18
**lines** [1] - 33:20
**listed** [1] - 3:19
**listen** [1] - 31:13
**live** [1] - 33:18
**Livelinks** [2] - 32:11,

33:18
**look** [1] - 18:5
**looked** [2] - 18:5, 32:24
**looking** [3] - 9:5, 15:1, 15:25
**lose** [7] - 20:21, 20:22, 20:23, 20:24, 26:4, 26:6
**losing** [1] - 20:21
**low** [2] - 24:24, 25:5
**lower** [2] - 15:18, 25:7

**M**

**mandatory** [5] - 10:10, 12:16, 25:1, 25:2, 36:9
**marijuana** [3] - 34:13, 34:14, 34:22
**married** [1] - 5:23
**MARSHAL** [2] - 39:25, 40:4
**marshals** [1] - 40:7
**Marshals** [1] - 40:7
**Marvin** [1] - 39:24
**mathematical** [1] - 23:15
**matter** [2] - 3:4, 40:12
**matters** [1] - 9:5
**maximum** [2] - 12:16, 25:9
**mean** [2] - 17:10, 37:13
**means** [7] - 19:7, 21:24, 22:1, 27:23, 30:6, 30:8, 31:20
**medical** [2] - 34:14, 34:21
**medicine** [3] - 8:2, 8:3
**meet** [5] - 27:8, 33:8, 33:19, 37:1, 37:5
**meeting** [1] - 32:15
**mental** [2] - 6:22, 8:7
**Mental** [1] - 7:5
**mention** [1] - 13:2
**mentioned** [1] - 35:9
**message** [2] - 32:12, 32:20
**messages** [1] - 32:14
**might** [2] - 5:9, 17:17
**mind** [2] - 35:6, 37:21
**minimum** [8] - 10:11, 11:13, 12:16, 22:6, 25:1, 25:2, 36:9, 36:11
**minor** [9] - 8:13, 11:7, 23:20, 30:17, 32:9, 34:8, 36:1, 36:24,

39:9
**minute** [1] - 35:12
**misdemeanor** [1] - 23:21
**mislead** [1] - 37:11
**misleading** [1] - 5:9
**Missoula** [6] - 7:6, 10:21, 26:24, 33:21, 34:2, 34:10
**mistakes** [1] - 38:20
**mix** [1] - 14:5
**money** [2] - 32:18, 34:6
**Montana** [15] - 7:5, 10:21, 11:2, 13:25, 16:14, 17:6, 20:11, 20:16, 32:21, 33:7, 33:20, 33:21, 34:1, 34:2, 35:15
**months** [4] - 6:14, 7:12, 24:2, 24:22
**morning** [10] - 3:8, 3:9, 3:25, 4:19, 4:20, 8:8, 8:11, 8:14, 33:6, 39:14
**mother** [2] - 33:9, 33:11, 39:9
**mother's** [1] - 34:7
**motion** [1] - 35:24
**move** [1] - 4:1
**moved** [2] - 6:11, 6:13
**moving** [1] - 23:11
**MR** [12] - 4:20, 4:23, 9:15, 13:1, 13:5, 14:14, 16:11, 16:13, 32:4, 35:11, 35:22, 39:20
**MS** [6] - 3:9, 3:12, 3:15, 31:18, 33:17, 39:17
**multiplicity** [1] - 23:14
**must** [2] - 30:9

**N**

**N-I-E-L-S-E-N** [1] - 5:20
**naked** [1] - 33:13
**name** [4] - 5:13, 5:16, 10:24, 34:8
**namely** [1] - 11:1
**narcotics** [1] - 7:19
**narrative** [1] - 14:2
**national** [1] - 9:17
**nature** [4] - 12:15, 16:24, 36:7, 39:7
**nearby** [1] - 34:11
**necessary** [2] - 24:4, 24:16

**need** [5] - 7:25, 17:5, 20:18, 21:14, 27:20
**Nelson** [1] - 5:17
**never** [1] - 21:24
**next** [5] - 3:4, 24:7, 33:4, 34:12, 36:25
**NIELSEN** [1] - 5:3
**Nielsen** [32] - 3:7, 5:15, 5:18, 5:19, 5:21, 6:2, 7:25, 8:6, 10:22, 13:10, 13:21, 14:3, 14:13, 14:15, 15:1, 15:3, 15:8, 16:14, 21:13, 32:6, 33:25, 34:16, 35:9, 35:16, 35:20, 35:24, 36:2, 36:6, 36:7, 36:16, 37:2, 38:6
**Nielson** [2] - 5:19, 15:4
**none** [2] - 28:5, 29:5
**not-greater-than-necessary** [2] - 24:4, 24:16
**nothing** [1] - 40:11
**November** [1] - 20:9
**number** [8] - 22:22, 23:7, 23:14, 23:16, 23:17, 35:17, 37:13, 37:14
**numbers** [4] - 23:6, 24:20, 32:14, 33:24

**O**

**o'clock** [1] - 39:14
**oath** [1] - 5:7
**objection** [1] - 19:8
**obstructing** [1] - 37:12
**obstructs** [1] - 4:12
**obtain** [1] - 12:2
**obtained** [2] - 3:22, 34:14
**obviously** [1] - 14:15
**occurred** [1] - 13:16
**OF** [1] - 3:5
**offender** [5] - 4:9, 11:23, 11:25, 12:9, 20:4
**offense** [12] - 11:1, 11:22, 23:7, 23:16, 24:1, 30:16, 31:16, 31:24, 32:3, 36:16, 36:21, 39:8
**Offer** [1] - 14:1
**offered** [2] - 28:23, 32:16
**Office** [1] - 38:22

**office** [5] - 20:22, 37:2, 37:20, 38:21, 40:8
**officer** [1] - 22:3
**old** [5] - 5:21, 12:5, 32:22, 33:22, 33:23
**once** [4] - 23:15, 27:2, 27:19, 28:10
**one** [15] - 3:17, 6:10, 7:12, 23:7, 23:11, 23:22, 23:23, 24:12, 26:3, 26:22, 27:11, 27:18, 29:6, 29:16, 38:15
**one-and-a-half** [1] - 6:10
**open** [2] - 29:8, 36:21
**operative** [1] - 13:13
**opinion** [2] - 17:7, 17:9
**opportunity** [2] - 38:21, 40:8
**opposed** [1] - 9:17
**oral** [3] - 16:8, 17:2, 17:10
**outside** [1] - 33:20
**over-the-counter** [1] - 8:3
**own** [5] - 5:4, 14:23, 29:7, 36:20, 39:5

**P**

**p.m** [1] - 40:13
**page** [6] - 15:2, 15:18, 16:1, 16:2, 18:5, 22:24
**pages** [2] - 15:2, 15:23
**panel** [1] - 27:24
**paper** [1] - 3:22
**paragraph** [4] - 18:5, 18:9, 19:3
**parole** [1] - 25:16
**part** [6] - 17:9, 22:3, 33:1, 35:16, 38:17, 38:19
**parties** [3] - 4:5, 4:15, 38:8
**passed** [1] - 27:19
**pay** [1] - 11:16
**penalties** [2] - 11:10, 21:20
**people** [11] - 12:4, 19:17, 26:7, 26:21, 26:24, 27:17, 27:19, 27:23, 28:3, 28:4, 33:12
**peremptory** [3] - 27:21, 27:22, 28:7

**period** [1] - 13:24
**perjury** [1] - 5:10
**persist** [1] - 26:5
**person** [3] - 11:1, 28:16, 29:17
**personal** [1] - 8:1
**personals** [1] - 32:11
**persuade** [2] - 10:23, 31:20
**Peterson** [16] - 3:8, 23:10, 26:16, 27:5, 28:11, 28:17, 29:6, 29:22, 31:14, 31:17, 33:15, 34:16, 36:17, 38:13, 39:6, 39:15
**PETERSON** [6] - 3:9, 3:12, 3:15, 31:18, 33:17, 39:17
**phone** [8] - 3:20, 3:22, 3:24, 33:24, 33:25, 35:12, 35:15, 35:17
**physical** [3] - 8:7, 28:14, 32:23
**physician** [1] - 8:1
**picked** [2] - 20:9, 34:10
**piece** [1] - 16:19
**Pine** [3] - 6:7, 6:15, 6:16
**place** [1] - 27:17
**play** [1] - 33:1
**plea** [29] - 3:6, 3:11, 3:14, 3:23, 4:21, 8:16, 11:22, 14:25, 15:11, 15:25, 16:4, 16:18, 17:3, 17:23, 18:4, 18:11, 18:15, 18:16, 18:17, 20:19, 23:11, 35:25, 36:8, 36:9, 36:13, 36:14, 36:22, 39:7
**plead** [16] - 3:16, 11:21, 14:18, 14:22, 20:18, 26:3, 26:10, 28:5, 29:5, 29:6, 29:12, 30:12, 30:23, 31:9, 31:11, 36:2
**pleading** [2] - 22:14, 35:6
**point** [5] - 13:11, 24:2, 24:13, 28:18, 37:15
**pointed** [1] - 23:24
**points** [4] - 6:20, 23:1, 23:22, 23:23
**points'** [1] - 4:10
**polygraph** [1] - 4:9
**pool** [1] - 27:4
**position** [1] - 27:13
**possession** [2] - 20:24, 20:25

**possibility** [2] - 14:9, 39:20
**potential** [2] - 12:16, 27:4
**power** [1] - 29:2
**preclude** [1] - 17:7
**predicament** [1] - 8:24
**preparation** [1] - 38:2
**prepared** [1] - 37:1
**preparing** [1] - 23:5
**prescription** [1] - 8:3
**presented** [1] - 15:23
**presentence** [5] - 23:4, 23:6, 36:25, 38:2, 38:12
**presents** [1] - 28:13
**presumption** [3] - 26:2, 26:4, 26:6
**pretrial** [1] - 13:6
**pretty** [1] - 23:3
**Prison** [1] - 20:11
**prison** [4] - 21:8, 22:1, 22:5, 22:9
**privacy** [1] - 10:25
**probation** [7] - 21:22, 21:24, 22:2, 37:2, 37:20, 38:21, 40:8
**problem** [2] - 13:20, 14:10
**problems** [1] - 29:16
**Procedure** [1] - 18:16
**procedure's** [1] - 26:19
**proceed** [1] - 35:21
**proceeding** [3] - 5:9, 19:25, 30:21
**proceedings** [3] - 3:1, 19:5, 40:12
**process** [3] - 13:6, 22:20, 28:17
**profile** [1] - 32:13
**promise** [5] - 16:8, 17:2, 17:10, 17:13, 35:2
**promised** [1] - 34:1
**pronounce** [1] - 5:16
**proof** [5] - 13:23, 16:16, 29:24, 33:16, 36:17
**Proof** [1] - 14:1
**prosecuting** [3] - 16:17, 17:8, 17:17
**prosecution** [1] - 5:10
**prospective** [1] - 27:24
**protect** [1] - 10:24
**prove** [10] - 13:16, 26:5, 28:11, 28:19, 29:6, 31:15, 31:19, 33:15, 34:17

**proved** [2] - 26:8, 32:6
**provided** [4] - 12:21, 34:4, 34:13, 35:14
**provides** [1] - 18:25
**provision** [1] - 16:15
**provisions** [2] - 18:4, 20:17
**PSR** [1] - 39:22
**public** [1] - 20:22
**purchased** [2] - 34:7, 34:24
**purpose** [1] - 7:13
**purposes** [1] - 19:18
**pursuant** [1] - 11:2
**pursue** [1] - 4:4
**put** [3] - 28:18, 28:20, 36:17

**Q**

**queer** [1] - 13:19
**questioning** [1] - 27:8
**questions** [11] - 7:24, 8:5, 9:2, 10:10, 15:10, 27:5, 27:6, 27:7, 37:6, 37:21, 37:24
**quickly** [1] - 33:23
**quite** [1] - 36:16

**R**

**race** [1] - 27:25
**rail** [1] - 27:16
**raise** [1] - 5:1
**randomly** [3] - 26:25, 27:2, 27:16
**range** [11] - 4:15, 10:11, 10:12, 11:9, 18:23, 19:8, 21:19, 21:20, 24:2, 24:12, 36:11
**read** [9] - 15:7, 15:22, 16:1, 38:14, 38:15, 38:16, 38:18, 38:19
**real** [1] - 29:16
**realize** [4] - 5:7, 7:24, 10:2, 12:8
**really** [1] - 30:8
**reason** [6] - 8:5, 8:15, 17:10, 27:24, 30:11, 37:10
**reasonable** [4] - 26:8, 28:12, 31:15, 36:19
**reasonably** [1] - 19:15
**reasons** [3] - 23:14, 29:19, 38:15
**receive** [2] - 4:10, 8:18

**received** [2] - 28:24, 32:20
**receiving** [1] - 32:12
**recess** [1] - 40:11
**recitation** [1] - 14:2
**recollection** [1] - 9:7
**recommend** [1] - 4:10
**recommendation** [1] - 35:20
**recommendations** [1] - 4:6
**record** [3] - 3:13, 20:1, 23:18
**records** [1] - 3:22
**reduction** [1] - 4:11
**referenced** [1] - 13:12
**referencing** [1] - 16:23
**reflects** [1] - 3:23
**refuse** [1] - 38:1
**refused** [1] - 9:6
**regarding** [1] - 12:9
**regards** [2] - 3:18, 4:3
**register** [3] - 11:23, 20:2, 20:4
**registration** [2] - 12:1, 12:9
**regularly** [1] - 7:10
**relates** [2] - 16:25, 18:9
**relationships** [1] - 12:4
**release** [7] - 11:15, 21:18, 21:19, 21:21, 22:1, 22:2, 22:9
**released** [2] - 6:19, 20:10
**religion** [1] - 27:25
**rely** [1] - 37:22
**relying** [1] - 17:2
**remain** [1] - 30:12
**remainder** [1] - 34:23
**remaining** [2] - 6:20, 27:17
**remand** [1] - 40:6
**removed** [1] - 28:3
**repeatedly** [1] - 34:12
**report** [7] - 23:5, 23:6, 37:1, 38:3, 38:12, 38:16
**represent** [1] - 30:24
**representation** [1] - 12:20
**require** [1] - 38:16
**required** [2] - 11:22, 36:17
**reserve** [1] - 4:5
**resides** [2] - 33:20, 33:21
**resolve** [1] - 39:2

**responsibility** [2] - 4:11, 23:13
**rest** [2] - 4:3, 11:24
**restitution** [2] - 4:15, 11:14
**restored** [1] - 20:17
**rests** [1] - 28:17
**retain** [1] - 30:24
**revoked** [1] - 22:9
**Richard** [8] - 3:7, 5:15, 10:22, 15:3, 21:12, 35:24, 36:2, 36:6
**RICHARD** [1] - 5:3
**rid** [2] - 27:23, 28:1
**right-hand** [1] - 15:19
**rights** [5] - 20:17, 20:20, 26:9, 31:4, 31:9
**role** [1] - 33:1
**room** [1] - 30:8
**roughly** [2] - 6:10, 32:20
**rounds** [1] - 33:4
**Rule** [1] - 14:10
**rule** [1] - 14:11
**Rules** [1] - 18:16
**rules** [3] - 22:7, 38:16, 38:17
**run** [1] - 22:23
**runs** [1] - 22:22
**Russell** [2] - 6:14, 39:14

**S**

**satisfaction** [1] - 9:2
**satisfied** [2] - 12:20, 12:23
**schedule** [1] - 34:4
**school** [1] - 6:5
**School** [1] - 6:9
**scored** [2] - 23:20, 23:22
**sealed** [2] - 20:3, 23:18
**seat** [1] - 27:16
**seated** [2] - 3:3, 28:10
**second** [8] - 13:8, 19:3, 22:24, 23:17, 24:16, 31:22, 34:23, 38:19
**Secretary** [1] - 21:11
**Section** [1] - 11:3
**section** [1] - 22:25
**see** [4] - 15:25, 27:9, 29:8, 33:10
**seeing** [3] - 7:10, 7:13, 7:16
**seized** [1] - 3:20

**select** [2] - 27:2, 27:16
**selected** [1] - 26:25
**selection** [1] - 28:6
**self** [1] - 30:14
**self-incrimination** [1] - 30:14
**send** [1] - 38:13
**sent** [2] - 21:7, 22:9
**sentence** [20] - 12:17, 18:11, 18:17, 18:24, 19:4, 19:10, 20:14, 22:4, 22:21, 24:4, 24:16, 25:2, 25:5, 30:25, 36:11, 36:13, 37:15, 38:3, 39:3, 39:11
**sentenced** [6] - 4:14, 16:18, 18:22, 19:7, 20:10, 36:10
**sentencing** [17] - 4:6, 4:16, 10:11, 10:12, 11:17, 18:12, 22:17, 22:23, 23:1, 25:13, 30:22, 30:25, 38:17, 39:2, 39:4, 39:13
**series** [1] - 13:12
**serve** [1] - 29:3
**set** [2] - 3:5, 39:13
**several** [2] - 33:3, 34:12
**sex** [10] - 4:8, 11:23, 11:25, 12:9, 13:16, 14:7, 20:4, 32:14, 33:4, 33:25
**sexting** [1] - 33:25
**sexual** [8] - 10:25, 11:2, 11:6, 16:15, 17:8, 31:21, 31:25, 34:12
**sexually** [1] - 4:7
**Shelby** [1] - 39:23
**shoes** [1] - 29:17
**short** [1] - 14:4
**show** [4] - 13:17, 14:7, 15:22, 35:12
**showed** [1] - 32:16
**side** [1] - 23:8
**sides** [1] - 27:14
**sign** [1] - 26:17
**signature** [2] - 15:4, 15:5
**signed** [2] - 15:8, 15:12
**significance** [1] - 18:9
**silent** [1] - 30:12
**sit** [1] - 27:3
**sitting** [2] - 22:25, 28:1, 28:3
**six** [4] - 23:23, 27:22, 28:1, 28:3

**Sixth** [1] - 13:14
**Smith** [1] - 39:14
**smoked** [1] - 34:23
**someone** [1] - 27:17
**sometime** [2] - 32:17, 34:22
**sometimes** [2] - 19:17, 38:25
**somewhere** [1] - 26:24
**sooner** [1] - 32:18
**sorry** [2] - 9:21, 34:2
**sort** [3] - 13:23, 18:14, 19:25
**sovereign** [1] - 16:17
**special** [2] - 11:16, 22:4
**specific** [1] - 23:9
**specified** [1] - 31:25
**spring** [1] - 32:17
**squeeze** [1] - 19:17
**stages** [1] - 30:21
**stand** [1] - 26:1
**standard** [1] - 22:3
**started** [2] - 32:14, 32:15
**starting** [3] - 24:2, 24:13, 37:15
**state** [7] - 3:13, 11:25, 12:11, 16:17, 17:8, 17:16, 20:6
**State** [3] - 10:21, 20:11, 33:20
**statement** [2] - 5:11, 32:2
**States** [6] - 3:6, 13:15, 16:6, 21:12, 36:6, 40:7
**stating** [1] - 32:20
**station** [4] - 33:8, 33:9, 34:4, 34:10
**status** [1] - 9:11
**statute** [5] - 16:22, 17:7, 24:8, 25:9
**statutes** [1] - 13:12
**statutory** [2] - 16:15, 17:6
**step** [4] - 23:3, 24:16, 24:19, 24:25
**still** [4] - 14:8, 14:18, 24:17, 30:23
**stole** [1] - 34:6
**street** [1] - 33:8
**stuff** [1] - 30:7
**subject** [1] - 5:10
**submit** [1] - 4:7
**subpoena** [1] - 29:2
**subpoenas** [1] - 29:3
**sufficient** [3] - 24:3,

24:15, 37:15
**sufficient-but** [2] - 24:3, 24:15
**supervised** [7] - 11:15, 21:18, 21:19, 21:21, 22:1, 22:2, 22:9
**supervision** [1] - 21:25
**supported** [2] - 29:25, 36:14
**sworn** [6] - 5:1, 5:4, 27:1, 27:2, 29:7, 36:20
**system** [4] - 21:25, 22:6, 25:14, 25:17

**T**

**table** [1] - 16:16
**telephone** [1] - 33:19
**ten** [11] - 6:14, 11:13, 22:6, 24:9, 24:25, 25:2, 27:21, 27:23, 28:2, 36:11, 39:13
**ten-year** [1] - 36:11
**term** [1] - 4:14
**terms** [3] - 12:3, 16:16, 35:20
**testified** [2] - 5:5, 28:23
**testify** [11] - 28:25, 29:4, 29:11, 29:18, 29:19, 29:20, 30:2, 30:4, 30:6, 30:10, 30:12
**testimony** [2] - 29:7, 36:20
**testing** [1] - 4:7
**texting** [1] - 35:17
**THE** [249] - 3:3, 3:8, 3:10, 3:13, 4:17, 4:21, 4:24, 5:7, 5:12, 5:13, 5:15, 5:16, 5:18, 5:19, 5:20, 5:21, 5:22, 5:23, 5:24, 5:25, 6:1, 6:2, 6:3, 6:5, 6:6, 6:8, 6:10, 6:11, 6:13, 6:16, 6:18, 6:21, 6:23, 6:25, 7:1, 7:2, 7:3, 7:4, 7:5, 7:6, 7:7, 7:8, 7:9, 7:10, 7:12, 7:13, 7:15, 7:17, 7:20, 7:21, 7:23, 7:24, 8:1, 8:2, 8:4, 8:5, 8:9, 8:10, 8:12, 8:14, 8:16, 8:17, 8:19, 8:20,

8:22, 8:23, 8:25, 9:1, 9:3, 9:4, 9:7, 9:8, 9:10, 9:13, 9:14, 9:19, 9:20, 9:21, 9:22, 9:23, 10:1, 10:2, 10:4, 10:5, 10:7, 10:8, 10:12, 10:14, 10:17, 10:18, 11:6, 11:8, 11:11, 11:12, 11:13, 11:16, 11:19, 11:20, 12:7, 12:8, 12:13, 12:14, 12:18, 12:19, 12:22, 12:23, 13:4, 14:12, 14:15, 14:17, 14:18, 14:20, 14:21, 14:24, 14:25, 15:6, 15:7, 15:9, 15:10, 15:14, 15:15, 15:16, 15:17, 15:20, 15:21, 15:22, 15:24, 16:3, 16:4, 16:7, 16:8, 16:10, 16:12, 16:21, 17:11, 17:12, 17:14, 17:15, 17:20, 17:21, 17:24, 17:25, 18:1, 18:2, 18:7, 18:8, 18:10, 18:13, 19:2, 19:3, 19:13, 19:14, 19:22, 19:23, 20:2, 20:4, 20:5, 20:6, 20:7, 20:8, 20:9, 20:11, 20:12, 20:13, 20:15, 20:16, 21:4, 21:5, 21:9, 21:10, 21:17, 21:18, 21:22, 21:23, 22:11, 22:12, 22:15, 22:16, 22:18, 22:19, 22:22, 23:2, 24:6, 24:7, 24:18, 24:19, 25:4, 25:5, 25:11, 25:12, 25:15, 25:16, 25:19, 25:20, 25:21, 25:22, 25:25, 26:1, 26:11, 26:12, 28:9, 28:10, 29:14, 29:15, 30:19, 30:20, 31:2, 31:3, 31:5, 31:6, 31:7, 31:8, 31:11, 31:12, 32:1, 32:5, 32:7, 32:8, 32:10, 33:15, 34:15, 34:18, 34:19, 34:21, 34:25, 35:2, 35:5, 35:7, 35:8, 35:19, 35:23, 36:4, 36:5, 37:4, 37:5, 37:9, 37:10, 37:18, 37:19, 38:5, 38:6, 38:24, 38:25, 39:19, 39:24, 39:25, 40:2, 40:4, 40:5

**theory** [3] - 13:7, 13:15, 13:18
**therefore** [1] - 16:23
**thinking** [1] - 18:19
**thinks** [1] - 13:15
**third** [4] - 24:19, 24:25, 31:23, 38:8
**thirty** [1] - 24:22
**thorough** [1] - 38:10
**thoroughly** [3] - 9:24, 10:15, 14:16
**threats** [2] - 17:22, 17:25
**three** [6] - 4:10, 6:20, 23:12, 23:22, 27:7, 40:3
**ticket** [1] - 34:8
**tiny** [4] - 19:16, 19:17
**Title** [1] - 35:25
**today** [2] - 20:19, 30:13
**took** [1] - 33:11
**top** [3] - 22:23, 22:25, 23:25
**total** [1] - 23:16
**totaled** [1] - 23:23
**towards** [1] - 32:10
**training** [1] - 10:6
**transmitted** [1] - 4:8
**travel** [1] - 35:14
**traveled** [1] - 34:9
**Treasury** [1] - 21:11
**treated** [3] - 6:22, 7:18, 29:21
**trial** [23] - 8:14, 13:22, 14:6, 14:10, 18:20, 18:21, 20:23, 26:4, 26:7, 26:13, 26:14, 26:15, 26:19, 26:22, 26:23, 28:6, 30:11, 30:21, 30:22, 31:10
**truthful** [2] - 37:6, 37:20
**try** [2] - 24:11, 37:11
**trying** [3] - 13:19, 13:20, 24:3
**turn** [1] - 18:18
**twenty** [1] - 5:22
**twenty-four** [1] - 5:22
**two** [12] - 3:19, 6:20, 7:12, 23:6, 23:22, 26:3, 32:16, 33:11, 34:24, 35:8, 38:15, 40:3
**type** [1] - 38:12
**typewritten** [1] - 15:2

**U**

**U.S** [6] - 11:3, 17:18, 19:6, 24:8, 36:1, 38:22
**unanimously** [2] - 26:7, 28:13
**under** [16] - 4:12, 5:7, 7:22, 12:5, 13:12, 16:14, 18:15, 18:16, 19:5, 20:16, 21:25, 29:19, 30:3, 31:21, 33:2, 33:11
**understood** [8] - 15:22, 16:2, 17:19, 17:20, 19:21, 21:16, 21:17, 31:1
**unfettered** [1] - 37:22
**unique** [3] - 13:8, 13:9, 16:13
**United** [6] - 3:6, 13:15, 16:6, 21:12, 36:5, 40:6
**unless** [1] - 4:12
**unlike** [1] - 30:1
**up** [26] - 7:1, 11:14, 12:10, 13:7, 13:11, 18:23, 19:18, 20:9, 22:8, 23:9, 23:14, 23:23, 25:8, 26:10, 28:3, 31:13, 32:12, 32:16, 32:17, 32:21, 33:7, 33:8, 34:10, 37:13, 37:14, 38:12

**V**

**valuable** [1] - 20:20
**variance** [1] - 22:23
**verify** [2] - 38:7, 38:9
**version** [1] - 21:22
**versus** [2] - 3:6, 36:6
**via** [1] - 33:18
**victim** [6] - 33:18, 33:20, 33:22, 34:4, 34:6, 39:8
**victim's** [1] - 10:25
**view** [1] - 13:22
**violation** [2] - 11:3, 35:25
**voir** [2] - 27:8, 28:7
**voluntarily** [1] - 29:1
**voluntary** [1] - 36:14
**vote** [1] - 20:21

**W**

**waive** [5] - 4:13, 19:4,

26:14, 30:14, 31:8
**waiving** [1] - 36:12
**walked** [1] - 34:11
**wallet** [1] - 34:7
**weeks** [1] - 34:24
**Wellbutrin** [1] - 6:23
**western** [1] - 7:5
**whole** [2] - 28:17, 38:20
**WILLIAM** [1] - 5:3
**William** [8] - 3:6, 5:15, 10:22, 15:3, 21:12, 35:24, 36:2, 36:6
**willingness** [1] - 14:22
**window** [1] - 19:17
**withdraw** [1] - 35:24
**withheld** [1] - 10:24
**witness** [4] - 5:3, 28:15, 29:21, 30:1
**witnesses** [7] - 28:13, 28:21, 28:22, 29:4, 29:9, 29:10, 29:11
**words** [9] - 13:9, 13:13, 13:14, 13:16, 13:19, 15:2, 15:11, 21:24
**works** [2] - 22:17, 25:14
**worth** [1] - 35:18
**writing** [1] - 26:15
**written** [1] - 16:9

**Y**

**year** [1] - 36:11
**years** [12] - 6:9, 11:13, 11:15, 12:5, 21:19, 22:6, 25:1, 25:2, 31:23, 32:21, 33:22, 33:23
**young** [1] - 13:10
**yourself** [2] - 8:24, 29:10

**Z**

**zero** [1] - 23:22